# EXHIBIT A

# JULY 17, 2003 DECISION

CV 07    5577

CW
(PR)

E-filing

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PRISON TERMS

In the matter of the Life )
Term Parole Consideration )
Hearing of: )            CDC Number C-60825
                          )
STEPHEN LIEBB             )
                          )
————————————————————————— )

COPY
INMATE

CALIFORNIA STATE PRISON, SAN QUENTIN

SAN QUENTIN, CALIFORNIA

JULY 17, 2003

10:25 A.M.


PANEL PRESENT:

CAROL DALY, Presiding Commissioner
R. RODRIGUEZ, Deputy Commissioner


OTHERS PRESENT:

STEPHEN LIEBB, Inmate
CHARLES CARBONE, Attorney for Inmate
DAVID DAHLE, Deputy District Attorney
ARTHUR DILLER, Victim's next of kin
MS. GRANT, Case Records Manager, Victim Services
Representative, San Quentin State Prison, Observer



CORRECTIONS TO THE DECISION HAVE BEEN MADE

        ____/____  No
        ____✓____  Yes          See Review of Hearing
                                 Transcript Memorandum


Sandy Tillman, Capitol Electronic Reporting

111

1    CALIFORNIA BOARD OF PRISON TERMS

2    D E C I S I O N

3    DEPUTY COMMISSIONER RODRIGUEZ:  Back on

4    record.  All parties are present.

5    PRESIDING COMMISSIONER DALY:  The Panel has

6    reviewed all of the information received from the

7    public and relied on the following circumstances

8    in concluding that the prisoner is not suitable

9    for parole and would pose an unreasonable risk of

10   danger to society or a threat to public safety if

11   released from prison.  The offense was carried out

12   in a -- in an especially cruel manner.  Multiple

13   victims were attacked.  One was injured in the 245

14   incident -- or two of them were injured in the 245

15   incident, which is count two, and one was killed

16   in separate incidents.  The offense was carried

17   out in a manner which demonstrates a total

18   disregard for inflicting pain or human suffering,

19   and the motive for the crime was unexplainable in

20   relation to the offense in that this crime was

21   unprovoked by the victim on the day in question.

22   And the prisoner was acting out of anger over

23   previous disputes.  These conclusions are drawn

24   from the Statement of Facts wherein the prisoner

25   on the date of the murder, the prisoner waited for

26   the victim to arrive at his girlfriend's house and

27   STEPHEN LIEBB  C-60825  DECISION PAGE 1   7/17/03

112

1   when the victim arrived and the girlfriend was

2   getting into the car, the prisoner jumped into the

3   car and as the victim was starting to drive off,

4   grabbed the steering wheel and the result of --

5   that the victim got out of the car and ran with

6   the prisoner pursuing him.  The prisoner

7   ultimately stabbed the victim in the chest killing

8   him.  Prior to the murder of the victim, Michael

9   Diller [sic] struck victim Gold and Arthur Diller

10  with a baseball bat, which is count two of this

11  sentencing.  The prisoner has on previous

12  occasions inflicted or attempted to inflict injury

13  on a victim.  He has a record of assaultive

14  behavior.  He has an escalating pattern of

15  criminal conduct and -- actually he has an

16  escalating pattern of violence and he has a

17  history of unstable and tumultuous relationships

18  with others.  His unstable social history and --

19  includes being out of control about three months

20  prior to the murder and where there were two or

21  three incidents where he had assaulted other

22  parties.  The prisoner has programmed in a limited

23  manner while incarcerated.  He has failed to

24  upgrade vocationally and he has not sufficiently

25  participated in beneficial self-help or therapy

26  programs.  The Panel makes the following findings,

27  STEPHEN LIEBB   C-60825   DECISION PAGE 2   7/17/03

113

1    that the prisoner's gains are recent, and he must

2    demonstrate an ability to maintain gains over an

3    extended period of time.  And in view of the

4    prisoner's lack of program participation, there is

5    no indication that the prisoner would behave

6    differently if paroled.  Nevertheless, the

7    prisoner should be commended for the fact that he

8    is getting exceptional work reports that his work

9    skills are always rated above average and that

10   prior to coming to prison, he did receive his law

11   degree at UCLA and his Bachelor of Science in

12   marketing.  And he has been taking some education

13   courses, second language being Spanish course

14   while he is in prison.  And he has been working as

15   a food services clerk.  He does have -- has been

16   taking a meditation class.  He has been involved

17   in the Father's program and he did receive one-on-

18   one therapy back in the middle '80s.  However,

19   these positive aspects of behavior -- of his

20   behavior do not outweigh the factors of

21   unsuitability.  In a separate decision, the

22   hearing Panel finds that the prisoner has been

23   convicted of murder, and it is not reasonable to

24   expect that parole would be granted at a hearing

25   during the next three years.  The prisoner

26   committed the offense in an especially cruel

27   STEPHEN LIEBB   C-60825   DECISION PAGE 3    7/17/03

114

1   manner.  Specifically, the prisoner, having an

2   ongoing dispute with the victim and his family, on

3   the date of the murder, he was waiting for the

4   victim to arrive at his girlfriend's house.  When

5   he jumped into the car that the victim was

6   driving, and after the car careened out of control

7   and the victim got out to run, the prisoner

8   pursued him, stabbing him in the chest, and killed

9   him.  Multiple victims were attacked with two

10  being injured with a baseball bat and one killed.

11  Even though these were separate incidents, he was

12  sentenced for both of these.  The offense was

13  carried out in a very dispassionate and a very

14  calculated manner because he was waiting for the

15  victim and in order to confront him.  The offense

16  was carried out in a manner which demonstrates a

17  total disregard for human suffering, and the

18  motive for the crime was unexplainable and in

19  relation to the offense in that this was totally

20  unprovoked on the day the murder was committed.

21  The prisoner has a prior record of violent

22  behavior in that the prisoner assaulted two

23  victims with a baseball bat, which was count two,

24  he was -- assaulted a library monitor at UCLA by

25  putting a knee to the groin of the victim and

26  threats had been made to the victim's family that

27  STEPHEN LIEBB   C-60825   DECISION PAGE 4    7/17/03

1  he intended to kill the entire family including

2  himself as was outlined in the probation officer's

3  report.  The prisoner has a history of tumultuous

4  relationships with others and especially in the

5  few months leading up to this crime and all of

6  the disagreements that were going on with the

7  Diller family.  A recent psychological report

8  dated 8-3-99 and authored by Dr. L. Carr, contains

9  some inaccurate information regarding the

10  prisoner's self-help and the prisoner has not

11  completed necessary programming which is essential

12  to his adjustment and he needs time to gain such

13  programming.  He has failed to participate in and

14  complete a vocational trade and self-help.  The

15  other concerns that I think are noteworthy is in

16  the current Board report, the counselor notes that

17  there is some concern as to whether the anger

18  stress related issues that led up to the violence

19  in the instant offense has been properly addressed

20  There is limited documentation information in the

21  Central File related to participation in self-help

22  and therapy, anger management or Alternatives to

23  Violence.  Liebb reports that he has read self-

24  help books, practices tai chi and yoga to deal

25  with stress.  Liebb feels he has dealt with his

26  anger and stress related issues.  Even though we

27  STEPHEN LIEBB  C-60825  DECISION PAGE 5   7/17/03

116

1    do acknowledge that the counselor goes on to state

2    that he feels Liebb would pose a low degree of

3    threat should he be released, I think his concerns

4    are very valid.  Therefore a long period of

5    observation and evaluation of the prisoner is

6    required before the Board should find the prisoner

7    suitable for parole.  We just ask that you remain

8    disciplinary free, and, if available, we need for

9    you to upgrade vocationally and educationally.  It

10   has been recommended by prior psychologists and it

11   was recommended by the previous Board.  And, if

12   available, participate in self-help and cooperate

13   with clinicians in the completion of a clinical

14   evaluation.  We're asking for a new psychological

15   evaluation, and in stating that the Panel's belief

16   that the prisoner's current mental health is an

17   important issue.  And in the new full evaluation,

18   the Panel requests the clinician specifically

19   address the following:  The prisoner's violence

20   potential in the free community, the extent to

21   which the prisoner has explored the commitment

22   offense, it comes to -- and come to terms with the

23   underlying causes and the need for further therapy

24   programs while incarcerated.  And we're also

25   asking the psychologist to read the transcript of

26   this hearing to understand the concerns and the

27   STEPHEN LIEBB   C-60825   DECISION PAGE 6     7/17/03

117

1    questions that have been raised by the Panel

2    members and by the District Attorney with regard

3    to the commitment offense and the acceptance -- or

4    the understanding of the underlying reasons.

5    Mr. Liebb, I think what was kind of disappointing

6    -- because when I read this case last night and I

7    was looking at it and I thought, yeah, you are

8    different than a lot of inmates, but I've

9    addressed other inmates in here, doctors, I don't

10   know if I've had another lawyer.  But very, very

11   professional people who did one act that got them

12   in prison.  So there are peers here in prison.

13   And they have attended programs and things.  For

14   you to say that you don't want to be in a program

15   that isn't with your peers, you know, the whole

16   idea of attending these classes is to interact

17   with other people, to maybe understand the

18   motivation and the underlying reasons as to why

19   they committed their crimes.  I find that your

20   argument for not attending self-help very weak and

21   I find your argument in saying that you already

22   have a law degree.  I know that you're doing a lot

23   of legal work here.  And, you know, perhaps you

24   should use your marketing degree when you get out,

25   but to go along with what the Board has

26   recommended of you in the past specifically with

27   STEPHEN LIEBB  C-60825  DECISION PAGE 7   7/17/03

118

1  self-help.  I think you need to be -- pay very
2  close attention.  I think when you get a
3  transcript of this hearing, that you need to read
4  everything and really see what the concerns are
5  and try to address them.  I don't see anything at
6  all that gives me any comfort that you have taken
7  enough of the self-help classes to be assured that
8  you know how to control your anger.  So with that,
9  do you have any comments, Commissioner?

10          DEPUTY COMMISSIONER RODRIGUEZ:  No comments.
11          PRESIDING COMMISSIONER DALY:  Okay, that
12  concludes the hearing.  It's 2:10 p.m.

13          DEPUTY COMMISSIONER RODRIGUEZ:  Okay,
14  Counsel?

15          ATTORNEY CARBONE:  Yes?  Thank you.

16          DEPUTY COMMISSIONER RODRIGUEZ:  That's his
17  copy.

18          ATTORNEY CARBONE:  Go ahead.  Thank you.
19  Stephen, did you want this?

20          INMATE LIEBB:  Yeah, thank you.

21                      --o0o--

22

23

24

25  PAROLE DENIED THREE YEARS

26  FINAL DATE OF DECISION_____ OCT 15 2003

27  STEPHEN LIEBB  C-60825  DECISION PAGE 8    7/17/03

119

## CERTIFICATE AND
## DECLARATION OF TRANSCRIBER

I, Sandy Tillman, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 118, and which recording was duly recorded at CALIFORNIA STATE PRISON, SAN QUENTIN, at SAN QUENTIN, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of STEPHEN LIEBB, CDC No. C-60825 on JULY 17, 2003, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated August 4, 2003, at Sacramento County, California.

Sandy Tillman
Transcriber
CAPITOL ELECTRONIC REPORTING