# EXHIBIT B

# LIFE PRISONER EVALUATION REPORT

# FOR JULY, 2006 BOARD

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
JULY CALENDAR 2006

I. **COMMITMENT FACTORS:**

    A. **Life Crime:**

| | |
|---|---|
| Commitment Offense: | *Count One*- Murder first, PC187, PC12022(b). with the use of a knife, 1203.075, intent to inflict great bodily injury. |
| | *Count Two*- Assault with a deadly weapon with force, PC245 (a). |
| County of Commitment: | Los Angeles |
| Case Number: | A083014 |
| Sentence: | 26 years to Life |
| MEPD: | 1-20-97 |
| Victim: | Michael Diller, age 23 |
| Received by CDC: | 2-15-83. |

        1. **Offense Summary:**

According to the Probation Officer's Report pages 5-9 prepared from the information derived from the District Attorneys file, Police Report and Preliminary Transcripts, Diller and Liebb had been friends for several years. However, there had been a disagreement between Liebb and Diller's family over rent payments. Liebb had managed apartments owned by Diller family, and lived rent free for approximately two years. Upon Liebb's graduation the Diller family requested that Liebb pay $150.00 per month in rent. Liebb refused and remained in the apartment for approximately two months paying no rent. He then rented the apartment to an uninvolved party charging them $187.00 a month and collecting six months rent in advance. Liebb pocketed this money and did not turn it over to the Diller family. Ill feelings regarding this disagreement continued over a period of several months that included threats and physical altercations on two separate occasions. On the date of the homicide, Liebb drove his motorcycle to the victim's girlfriend's house. There he found the victim and his girlfriend sitting in the victim's car. Liebb jumped in the victim's car from the passenger side, climbed across the girlfriend and began striking the victim. In an attempt to evade the attack, the victim started to drive, but Liebb grabbed the steering wheel causing the car to veer to the right and crash. The victim then got out of the car and ran into a park. Liebb, in foot pursuit, chased him into the park. The victim dove through a window of a recreation equipment room located on the park grounds. Liebb, still in pursuit, then leaned through the broken window and stabbed the victim once in the chest. According to a witness, Liebb then

returned to his motorcycle and drove away. The witness, then reportedly, walked to the park where she observed the victim lying on the ground covered in blood. The victim was pronounced dead at the scene. An autopsy was performed on 7-13-81 and the cause of death was determined to be a knife wound to the chest.

2. **Prisoner's Version:**

Liebb provided the following information regarding his version of the instant offense.

I have not tried to relive my sin or recreate it in my mind for many years. I can't run or hide from my guilt or assign it somewhere else. So what follows is not an excuse or an explanation. It is only what I see now as my past and is part of the understanding I have of the horrible things I did.

On the day of my crime I got on the almost new Suzuki just to ride. It was a coincidence that I met Michael Diller who was driving his Olds Cutlass.

I followed him after he swerved his car at me. I thought he was going to where Arthur was staying. When he stopped the car I parked my bike on the sidewalk and very soon after a girl opened the door to this Cutlass. I grabbed the door and wanted to confront Mike about what was going on with his brother attacking me two days earlier.

He accelerated the car and drove with me hanging out of the car. I grabbed the wheel and after a short time the car crashed. He ran out and I chased him. I didn't know the area where we were. He dove into what I later found out was an equipment room of a park. I pulled the knife out and dove in after him, stabbing him in the chest.

I don't remember how we got out of the shed. But I know I only stabbed him once and we were both standing. I saw him grab the blade of the knife with his hand and I didn't want to hurt him so I didn't pull the knife. I let him release his hand from the blade. At the moment I already felt sad about what happened to our friendship and to see my friend bleeding.

I said something to him like: "I never did anything to you or your family."

A crowd gathered because of the crash and it was a beautiful July afternoon. I told someone that he had tried to run me over when I was on my bike. I didn't want the crowd to jump on me. I could hear a siren in the distance. I left with Michael standing. I knew I stabbed him but he didn't seem hurt physically to me. He seemed hurt more by the car crash and just stunned by what happened. I could see in his eyes he was hurt by what I did which made me feel sorry.

I regretted that I could hurt someone I cared about like this, that someone with whom I had been good friends with was now someone I treated like an enemy.

I think I stabbed him because I still felt the anger, hurt, and fear over what Arthur did to me and wanted it to stop. I thought then, that I was showing them I would take it further. But never did I want to nor did I have it in my heart to take it as far as it went.

At one time, I thought that I could never forgive someone who killed anyone in my family. Any lie I told to help punish such a person, would, in my mind, be acceptable to the God who judges me.

Who could blame the victim's family for doing everything in their considerable power to assure that I was punished to the maximum degree possible?

What if I never had any intent to kill Michael and that I did not plan or premeditate to kill him. A jury found differently and Arthur doesn't have his brother and his parents lost their son.

I accept my guilt beyond anything the law of man imposes as a penalty. Under the ancient laws of the Israelites, I am cut off from my people forever.

For a shadow of mercy from man, I have no reason to lie about my guilt.

Michael Diller was a peaceful man. That may not seem like a great epithet but after two decades into my punishment, I think that a peaceful person is rare and precious on this earth.

I wrote about ten years ago asking the Diller Family for forgiveness. I used the words of a prophet of my people Micah:

"With what shall I come before the Lord and bow down before the exalted God.
Shall I come before Him with burnt offerings?
With calves a year old;
Will the Lord be pleased with thousands of rams?
And ten thousand rivers of oil?

Shall I offer my firstborn for my transgression?

"The fruit of my body for the sin of my soul?
He has showed you, O' man, what is good?
And what does the Lord require of you.
To act justly and to love mercy
And to walk humbly with your God."
[Micah 6:6-8]

LIEBB, STEPHEN          C-60825          CSP-SQ    SUB 3    JULY 2006          3

After I left Michael, I drove to my apartment but had lost my keys. I went to a girlfriend's apartment in Santa Monica but she was not home. My motorcycle wouldn't start so I was stranded near her apartment.

I called my family and relatives several times from pay phones, not telling them what happened. I was distraught. Later my girlfriend came home and I called Kelly Bixby and he met me. He took me to his family's home in Malibu. I told him what happened and he wanted me to stay at his home because of concern that Arthur would retaliate against me.

I had a puppy in my apartment and wanted to go home and feed him. So I returned by cab and was arrested outside my apartment.

I was interviewed by Beverly Hills Police and did not believe I was being charged with murder because I thought Michael was not seriously hurt.

I didn't plan to escape or flee just as I didn't plan my crime.

None of what I write is to excuse my guilt or defend my action.

Under the laws under which Michael and I were raised there is no atonement for the shedding of man's blood.

B. **Aggravating/Mitigating Circumstances:**

1. **Aggravating Circumstances:**

   a. The victim was vulnerable.
   b. Liebb had a relationship of confidence and trust with the victim.
   c. Liebb had the opportunity to cease, but continued with the crime (chasing the victim into the park).
   d. The murder was senseless and served no purpose.
   e. Use of a weapon (knife).
   f. The nature of the crime exhibited viciousness, cruelty or callousness.

2. **Mitigating Circumstances:**

   a. Liebb has no prior history of criminal behavior.

II. **PRECONVICTION FACTORS:**

A. **Juvenile Record:**

None.

B. **Adult Convictions and Arrests:**

Liebb had no adult arrests, prior to the life crime.

C. **Personal Factors:**

Liebb was 25 years old when he committed this crime. The POR indicates that he is from a stable New York Family. He is the second eldest of one brother and three sisters. There is no criminal history in the family. Per POR pg. 2 Liebb is a graduate with a Bachelor of Science Degree in Marketing in 1976. He came to California in 1977 to attend law school at the University of California, Los Angeles (UCLA). He graduated from UCLA in 1980 and began working in a law firm. There is no history of substance abuse noted.

III. **POSTCONVICTION FACTORS:**

A. **Special Programming Accommodations/Disability:**

The inmate denies any disabilities or need for special accommodations for his BPT hearing per the Armstrong Remedial Plan.

B. **Custody History:**

Liebb was received by California Department of Corrections (CDC) at the California Institute for Men- Reception Center (CIM-RCC).

Liebb was transferred to Folsom on 4-7-83. On 4-20-83, subject appeared before UCC for Initial Classification and his custody was set at Close B. On 6-10-83, Liebb was assigned to the Counseling Center. On 8-16-83 subject appeared before Unit Classification Committee (UCC) for a Transfer Review. Liebb's case was referred to the Classification Services Representative (CSR) for recommendations of a transfer to California Medical Facility (CMF), for a level III override.

Liebb was transferred to CMF on 9-2-83. On 9-14-83 subject appeared before Initial Classification Committee (ICC), his custody was reduced to Medium A, he was accepted to the Category (W) Program and he was assigned as a Clerk. On 8-30-84, subject appeared before UCC for Program Evaluation for consideration of Permanent Work Crew (PWC) and he was accepted to the PWC. On 6-22-87, subject appeared before UCC for a Program Review and his case was referred to the CSR for recommendations to retain at CMF-Main as a critical worker. On 3-27-89, subject was placed in Administrative Segregation (Ad-Seg) due to a CDC 115 for an assault on an inmate per CDC114D indicates that there may be a possible relationship to this assault and the homicide which occurred on Inmate Leabow D38240. On 4-3-89, subject appeared before ICC for review of his Ad-Seg status, his custody was increased to Max A. ICC elected to retain Liebb in Ad-Seg pending investigation; his case was referred to the CSR for a 90 day Ad-Seg extension. On 4-10-89 subject appeared before ICC for review of his Ad-Seg status, a new CDC 114D was written on 4-4-89, which indicates Liebb has been implicated in a conspiracy in the homicide of inmate Leabow. Liebb was retained in Ad Seg due to the seriousness of the allegation, pending investigation. On 5-12-89, Liebb appeared for Ad-Seg Review

with recommendations to retain in Ad-Seg pending a District Attorney referral. On 7-28-89, subject appeared before ICC; his case was referred to the CSR with recommendations for transfer to the Corcoran-Security Housing Unit (SHU) to confirm a twenty six-month SHU term. On 7-17-89, Liebb was found guilty for Conspiracy to commit force and violence, rules violation report (RVR) was adjudicated and Liebb was found guilty, however, no loss of behavioral credit was assessed due to time constraints not being met. The force and violence referred to was a homicide and the committee elected to assess a 29 month SHU term.

On 8-24-89, subject transferred to California State Prison-Corcoran. On 8-31-89, subject appeared before Initial Classification in the Security Housing Unit, subject retained on Max A status.

On 3-26-90, subject was transferred to the California Medical Facility. On 4-20-90, subject appeared before ICC, and his case was referred to the CSR for Ad-Seg Extension pending rehearing of CDC-115.

On 5-11-90, Liebb was transferred to CSP-Corcoran. On 2-5-91, Liebb was placed in Ad Seg at San Quentin per 114-D, due to being an out to court return from Corcoran-SHU and he was retained in temporary segregation pending review. On 2-28-91, Liebb appeared before ICC and his case was referred to the CSR with recommendations of transfer to CCI.

On 4-10-91, subject was transferred to California Correctional Institution (CCI). On 4-18-91, subject appeared before UCC, custody was reduced to Close B and he was placed on support services waiting list. On 6-18-91, subject was assigned as a Cook. On 7-11-91, subject appeared before UCC for a Program Review, and his case was referred to the CSR for recommendations of transfer to the California Medical Facility for rehearing of a CDC 115.

On 7-26-91, Liebb was transferred to CMF-NRC. On 8-1-91, subject appeared before ICC for Initial Review; he was retained in Ad Seg. On 9-25-91, subject appeared before ICC for Ad-Seg extension. On 9-12-91, his CDC 115 for Conspiracy (Leabow Homicide) was dismissed due to a court order, which disallowed the use of confidential information used to charge Liebb.

On 10-9-91, subject was transferred to CMF Main. On 10-25-91, subject was transferred to CCI. On 11-5-91, subject appeared before UCC for Initial Classification, his custody was reduced to Close B. UCC elected to place Liebb on the support services waiting list and his case was referred to the CSR for recommendations of irregular placement at CCI, due to the length of term and time to serve. On 4-2-92, subject appeared before UCC for Annual Review/Post Board, and his case was referred to the CSR with recommendations to retain at CCI IV B. On 2-25-92, subject appeared for Annual Review, and his case was referred to the CSR with recommendations of transfer SOL III/ or MCSP III.

On 3-29-93, subject was transferred to Corcoran. On 4-2-93, subject appeared before ICC for Initial Classification, and his custody was retained at close B. On 4-28-93, subject was assigned to the Yard Crew. On 6-9-93, subject appeared before UCC for Special Review and his case was referred to ICC for Close B review, with recommendations of Medium A custody. On 7-16-93, subject appeared before ICC for a custody reduction review and his custody was reduced to Medium A. On 7-14-94, subject appeared for an Annual Review and his case was referred to the CSR for recommendations of transfer Corcoran III. On 1-31-95, subject appeared before UCC for a Transfer Review, UCC referred his case to the CSR with recommendations of transfer to California Men's Colony-West (CMC-W) or San Quentin.

On 2-27-95, subject was transferred to San Quentin Main. On 3-13-95, subject was assigned to Education as a Clerk. On 3-6-97, subject appeared for Annual Review, and his case was referred to the CSR for recommendations of CMC-West. On 3-13-02, subject appeared for a Program Review regarding a CDC 602 appeal, the appeal was denied. On 3-13-03, subject's case was reviewed in absentia, with no program changes noted. On 7-17-03 subject appeared before the BPT, parole was denied for three years. The BPT made the recommendations to remain disciplinary free, upgrade vocationally, participate in self help, and to get a new psychiatric report. On 7-23-03 subject appeared before UCC for a Post Board review. Committee informed subject of the BPT's decision and recommendations and continued his present program. On 3-10-05 subject's case was reviewed in absentia with no program changes noted. On 3-8-06 subject's case was reviewed in absentia for an annual review, with no program changes noted. Subject remains in the general population at San Quentin where he is assigned as a Food Service as a clerk.

C. **Therapy & Self-Help Activities:**

**Education:**

| DATE | COURSE |
|---|---|
| 08-28-97 | English |
| 05-21-99 | Biology |
| 10-07-99 | Business |
| 05-09-00 | Literacy |
| 03-27-01 | Introduction to Electronics |
| 12-10-01 | Economics |
| 01-30-02 | Spanish |
| 08-14-02 | Spanish 102 |
| 12-29-03 | Mod 1- Paralegal Orientation, Learning Strategies, |
| 12-29-03 | Mod 1- Paralegal Orientation, The Paralegal Profession |
| 02-17-04 | Mod 2- Paralegal, U.S. Court System Part 1 |
| 02-18-04 | Mod 2- Paralegal, U.S. Court System Part 2, Written Communication 1 |
| 04-27-04 | Mod 3- Paralegal, Written Communication 2 |
| 06-14-04 | Mod 4- Paralegal, Interpersonal Communication |
| 06-23-04 | Mod 3- Paralegal, Written Communication 3 |
| 09-23-04 | Mod 5- Paralegal, Legal Terminology Part 1, Legal Terminology Part 2 |

LIEBB, STEPHEN            C-60825            CSP-SQ   SUB 3   JULY 2006            7

| | |
|---|---|
| 03-02-05 | Mod 6- Paralegal, How The Law Works, Conducting Legal Investigations and Interviews |
| 03-11-05 | Mod 7- Paralegal, Critical Thinking Skills |
| 03-16-05 | Mod 6- Paralegal, Graded Project, Practicing Your Investigation |
| 03-23-05 | Mod 7- Paralegal, Ethics and Professional Responsibility |
| 07-18-05 | Mod 8- Paralegal, Business Law |
| 07-26-05 | Mod 8- Paralegal, Torts |
| 08-19-05 | Mod 9- Paralegal, Technologies in the OFFICE |
| 08-22-05 | Mod 9- Paralegal, PC Basics |
| 09-01-05 | Mod 10- Paralegal, Law Office Computing |
| 09-02-05 | Mod 10- Paralegal, Internet Basics |
| 09-16-05 | Mod 10- Paralegal, Issues in Technology |
| 09-16-05 | Mod 11- Paralegal, Microsoft Word |
| 09-21-05 | Mod 11- Paralegal, Legal Project |
| 11-04-05 | Mod 12- Paralegal, Microsoft Excel |
| 11-09-05 | Mod 12- Paralegal, Legal Research |
| 11-17-05 | Mod 13- Paralegal, Computer Assisted Legal Research- part 1 |
| 12-06-05 | Mod 13- Paralegal, Computer Assisted Legal Research- part 2 |
| 12-14-05 | Mod 14- Paralegal, Civil Litigation |
| 12-21-05 | Mod 14- Paralegal, Discovery |
| 01-04-06 | Mod 14- Paralegal, Alternative Dispute Resolution |
| 01-25-06 | Mod 15- Paralegal, Criminal Litigation |
| 02-13-06 | Mod 15- Paralegal, Preparing for Trials |

**Laudatory Chrono's:**

| DATE | CHRONO | AUTHORED BY |
|---|---|---|
| 10-09-84 | Extraordinary Clerk Skills, capability and trustworthiness. | R. Meekings Correctional Sergeant |
| 08-27-84 | Lieutenant's Clerk, steady and conscientious work habits. | J. Carlson Correctional Lieutenant |
| 01-14-86 | Security and Investigations Clerk, outstanding work performance | J. Henson Correctional Lieutenant |
| 02-03-86 | Clerk Skills | D. Mobert Correctional Sergeant |
| 04-24-87 | Clerical Work Skills, asset to office | K. Nyberg Security and Investigation |
| 06-29-87 | Critical Work Skills | J. McGrath Correctional Counselor II |
| 02-21-89 | Professional and competent worker | A. P. Kane Correctional Lieutenant |
| 03-16-93 | Above average work performance | P. Grant Correctional Officer |
| 03-21-93 | Exceptional dining hall worker | D. McCoy Correctional Officer |

| Date | Comment | Signed |
|---|---|---|
| 03-24-94 | Clerical Skills | J. Sounders, Correctional Officer |
| 08-25-94 | Valuable aid, attention to detail, willing to assume responsibility. | B.L. Houston, Correctional Lieutenant |
| 08-26-94 | Diligent, meticulous and courteous worker. | J. Cueva, Correctional Lieutenant |
| 04-17-96 | Excellent Food Service worker | D. Betts/ D.R. Elliott, Correctional Officers |
| 02-03-02 | Excellent Back Dock /Porter /Clerk Worker. | N.C. Salazar, Food Service Department |
| 01-31-04 | Custody clerk, excellent worker, can manage his responsibilities in a calm and effective manner, his positive and attitude will help him integrate into society. | R. Branton, Food Service Department. |
| 04-24-04 | Trustworthy, responsible, willing to work, respectful, subjects attitude is conducive of parole. | O. Echeveria, Food Service Department. |
| 04-24-04 | Subject behaves appropriately, is respectful, outgoing, friendly, avoids over familiarity with staff, gets along well with everyone regardless of race, age, creed. Is an excellent candidate for parole. | S.K. Byrne, Correctional Officer. |
| 04-26-04 | Performs assignment efficiently with little or no supervision, interacts with everyone cordially and efficiently. Writer believes that Liebb is committed to a crime free lifestyle, and would adjust well to free society. | T. Calvo, Food Service Department. |
| 05-13-04 | Liebb is honest, respectful, mature, has an excellent work ethic, is polite, has positive energy, well organized, detail oriented, pleasant. Writer believes Liebb will maintain his positive attributes in free society. | L. Brucell, Correctional Officer. |
| 05-14-04 | Trustworthy, responsible, never complains, performs tasks in an efficient and timely manner, respects authority, is courteous. Writer believes that Liebb is an excellent candidate for parole. | M. Berry, Food Service Department. |

| Date | Comments | Author |
|---|---|---|
| 01-06-06 | Has known Liebb for over 10 years, supervised him in many jobs. Liebb is highly capable, completes tasks with minimal supervision, successfully part of a crew of many backgrounds with out compromising his integrity. He can calmly and effectively get job done in str3essfull situations, can communicate effectively. He has expressed remorse for his victim and the victims family. He has used his educational background to help others less fortunate than himself. Liebb is committed to his faith and will make a positive contribution to any community. | N.C. Salazar, Food Service Department. |
| 05-01-04 | Has supervised Liebb for seven years. Liebbs easygoing manner allows him to work well with inmates and staff members in the Food Service department. He follows instructions, is a team player, and self motivator. Writer has rarely encountered an inmate who is as mature and well focused as Liebb in the twelve years he has been a Peace Officer. and believes he would be an excellent candidate for release. | M.C. Solis Correctional Sergeant |
| 03-01-06 | Has been a Correctional Officer for Sixteen years, will without reservation recommend Liebb for parole. Liebb has excellent leadership skills, is honest, faithful and has a "can do attitude". Liebb helps other inmates address grievance issues and can do his own time with out negative affiliations. | R.Snodgrass Correctional Officer |

**Self-Help and Therapy-**

| DATE | ACTIVITY |
|---|---|
| 06-25-85 | Psychological Therapy |
| 11-22-02 | Fathers Program |
| 12-08-03 | Insight Meditation Class |
| 12-08-03 | IMPACT "A Mans Ethics" |
| 05-11-04 | Yoga |
| 07-26-04 | IMPACT-Session 1, Violence Prevention Workshop (Certificate) ( |
| 07-26-04 | IMPACT-Session 2, Time Out |
| 07-26-04 | IMPACT-Session 3, Body Signals |
| 07-26-04 | IMPACT-Session 4, Self Talk |
| 07-26-04 | IMPACT-Session 5, Conflict Resolution |
| 10-18-04 | IMPACT-Session 1 Addiction |
| 01-03-05 | IMPACT-Session 2 Addiction |
| 02-14-05 | IMPACT-Session 3 Addiction (Certificate) |
| 03-21-05 | IMPACT-Session 4 Addiction |
| 05-23-05 | IMPACT-Session 1, Relationships |
| 06-27-05 | IMPACT-Session 2, Relationship Dynamics |
| 08-01-05 | IMPACT-Session 3, Cultivating Successful Relationships |
| 09-26-05 | IMPACT-Session 4, Specific Relationships |
| 10-03-05 | IMPACT-Module IV, Relationships (Certificate) |
| 10-12-05 | 100 Hours of Hatha Yoga |
| 10-17-05 | Hatha Yoga Fundamentals training |
| 11-08-05 To 11-10-05 | Friends Outside, Creative Conflict Resolutions Workshop. Topics covered: Anger Management Conflict Resolution Communication |
| 11-10-05 | Friends Outside Creative Conflict Resolutions |
| 11-14-05 | Friends Outside, Creative Conflict Resolutions |
| 03-22-06 | Friends Outside Parenting Education Program (Certificate) |

D. **Disciplinary History:**

| Date | Document | Division | Offense | Disposition |
|---|---|---|---|---|
| 03-26-89 | 115 | D | Force and Violence (fighting) | Guilty 90 days loss of Credit |
| 07-07-91 | 128A | | Refusal to work due to Religious reasons. | |

IV. **FUTURE PLANS:**

    A. **Residence:**

        1. If paroled to Los Angeles, Liebb has contacted Choices Recovery Services, a half way house regarding housing, response letter dated 4-17-06.

        Choices Recovery Services
        Sean Zullo Director
        P.O. Box 40119
        Long Beach, CA 90804
        (562) 930-0565

        Liebbs family is willing to offer financial support for him to rent his own apartment. Liebb indicates support letters are pending regarding a place to stay in the Los Angeles area.

        2. If Liebb were allowed to parole to Israel he would reside at the Kibbutz Ayelet-ahashar, with a Mr. Lapid Harut. There is a support letter dated 6-20-04, indicating that Mr. Lapid Harut will take responsibility for Liebb, get him enrolled in school and provide a place for Liebb to live.

    B. **Employment:**

Liebb is eligible to present his case to the Bar Association after taking the Professional Responsibility Ethic's Exam to be considered for reinstatement of his Attorney License, and has several job offers.

Liebb has an employment offer from California Prison Focus, Charles Carbone, Esquire, as a paralegal. Employment offer dated March 24, 2006.

Charles Carbone, Esq.
2940 16th. Street, Suite B5
San Francisco, CA 94103
(415) 252-9211

Liebb has an employment offer from Sterling Ventures, Employment offer dated March 17, 2006.

Sterling B. Scott
1388 Haight St. #95
San Francisco, Ca 9471
(415) 255-4657

V.  **SUMMARY:**

    A.    The life crime has been devastating to everyone involved. The victim, his family, and Liebb's family were all friends. This crime has negatively affected everyone involved. It is tragic that the events leading up to the instant offense escalated into such a violent act. Liebb expresses remorse for the death of his friend and the impact it has had on the victim's family. Liebb takes responsibility for his crime. Liebb wrote a lengthy letter dated 12-25-02, that sheds light to the events that led up to the crime. This letter was placed in Liebb's central file in the miscellaneous section, it was too lengthy to include all of it in the Board Report.

        Liebb has very favorable work reports, and several support letters from staff indicating that they feel he is a good candidate for parole. He has remained disciplinary free since 1991. He has become more involved in self help and educational programs since his last appearance before the board.

        Liebb has numerous support letters from churches, former Professors and various community members that knew him before he came to prison, they are all supportive of Liebbs release and have offered to provide various levels of support.

        Liebb has a strong educational background and he should not have difficulty obtaining employment, he is enrolled in college classes to become a paralegal to prepare him for the changes in the legal profession and to prepare him to enter free society.

        Liebb has contacted many outside agencies such as Friends Outside and Choices Recovery Services who have both written response letters indicating the programs that they provide and what kind of assistance they may provide.

    B.    Prior to release from prison, Liebb would benefit from continuing his participation in the college program, remaining disciplinary free, and actively participating in self-help/therapy programs.

    C.    This report is based on a thorough review of Liebb's central file, an interview with Liebb and casework contact with Liebb.

    D.    Liebb was given the opportunity to have an Olson Review. He reviewed his file on 5-22-06. This review is documented on a 128B dated 5-22-06 and is located in the chrono section of his central file.

    E.    No accommodation is required per the Armstrong vs Davis BPT parole Proceedings remedial plan for effective communication.

_____
V. Zanni
Correctional Counselor I


_____
V. Kelley
Correctional Counselor II


_____
C. Belshaw
Correctional Counselor III, C&PR


LIEBB, STEPHEN           C-60825           CSP-SQ    SUB 3   JULY 2006        14

- [ ] DOCUMENTATION HEARING
- [x] PAROLE CONSIDERATION HEARING
- [ ] PROGRESS HEARING

**INSTRUCTIONS**
TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT.
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| YEAR | POSTCONVICTION CREDIT | | REASONS |
|---|---|---|---|
| | BPT | PBR | |
| 01-01-03 To 12-31-03 | | | **Placement:** San Quentin State Prison, level II, General Population.<br>**Custody/Classification:** Medium A, Classification score 19.<br>Subject appeared before UCC for an Annual Review on 3-13-03, subjects classification score was raised to the mandatory minimum score of 19 for a life term, he continued with the present program. On 7-23-03 subject appeared before UCC for a Post Board Review, subject continued his present program.<br>**Academics:** 12-29-03 Module 1, Paralegal learning strategies.<br>**Work Record:** Main Food Service Relief Clerk.<br>**Group Activities:** 12-8-03 Insight Meditation, 12-8-03 IMPACT "A Man's Ethics".<br>**Psychiatric Treatment:** None.<br>**Prisoner Behavior:** None.<br>**Other:** On 7-17-03 subject appeared before the BPT was found unsuitable for 3 years. |
| 01-01-04 To 12-31-04 | | | **Placement:** San Quentin State Prison, level II, General Population.<br>**Custody/Classification:** Medium A, Classification score 19.<br>**Academics:** 2-17-04 Module 2, Paralegal U.S. Court System part 1, 2-18-04 Module 2, Paralegal U.S. Court System part 2, 2-18-04 Paralegal Written Communication part 1, 4-27-04 Paralegal Written Communication part 2, 6-23-04 Paralegal Written Communication part 3, 6-14-04 Interpersonal Communication, 7-14-04 Interpersonal Communication.<br>**Work Record:** Main Food Service Relief Clerk.<br>**Group Activities:** 5-11-04 Yoga, 7-26-04 IMPACT: session 1 Violence Prevention, session 2 Time Out, session 3 Body Signals, session 4 Self Talk, session 5 Conflict Resolution, 10-18-04 IMPACT Session 1 Addiction<br>**Psychiatric Treatment:** None.<br>**Prisoner Behavior:** None.<br>**Other:** None. |

CORRECTIONAL COUNSELOR SIGNATURE V. Banni CCI
DATE 5/22/06

BOARD OF PRISON TERMS
.iebb    C-60825    CSP-SQ    SUB 3    STATE OF CALIFORNIA
July 2006

PT 1004 (REV. 7/86)

PAGE 1 OF 2

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 01-01-05 To 12-31-05 | | | **Placement:** San Quentin State Prison, level II, General Population.<br>**Custody/Classification:** Medium A, Classification score 19. On 3-10-05 subject appeared before UCC for an Annual Review, he continued his present program.<br>**Academics:** None.<br>**Work Record:** Main Food Service Relief Clerk.<br>**Group Activities:** 1-3-05 IMPACT session 2 Addiction, 2-14-05 IMPACT session 3 Addiction, 3-21-05 IMPACT session 4 Addiction, 5-23-05 IMPACT session 1 Relationships, 6-21-05 IMPACT session 2 Relationship dynamics, 8-1-05 IMPACT session 3 Cultivating Successful Relationships, 9-26-05 IMPACT session 4 Specific Relationships, 10-12-05 100 Hours Hatha Yoga, 11-14-05 Friends Outside Creative Conflict Resolutions.<br>**Psychiatric Treatment:** None.<br>**Prisoner Behavior:** None.<br>**Other:** None. |
| 01-01-06 To Present (5-9-06) | | | **Placement:** San Quentin State Prison, level II, General Population.<br>**Custody/Classification:** Medium A, Classification score 19. On 3-8-06 subjects case was reviewed by UCC for an annual review, his program remained the same.<br>**Academics:** None.<br>**Work Record:** Main Food Service Relief Clerk.<br>**Group Activities:** 4-4-06 Friends Outside Parenting Education Program for Incarcerated Parents.<br>**Psychiatric Treatment:** None.<br>**Prisoner Behavior:** None.<br>**Other:** None |

CORRECTIONAL COUNSELOR SIGNATURE: V. Danni, CC    DATE: 5/22/06

**ORDER:**
☐ BPT date advanced by _____ months.    ☐ BPT date affirmed without change.
☐ PBR date advanced by _____ months.    ☐ PBR date affirmed without change.

**SPECIAL CONDITIONS OF PAROLE:**
☐ Previously imposed conditions affirmed.
☐ Add or modify _____

☐ Schedule for Progress hearing on appropriate institutional calendar.

Liebb    C-60825    CSP-SQ    SUB 3    July 2006

PT 1004 (REV. 7/86)

PAGE 2 OF 2