# EXHIBIT C

# PSYCHO-SOCIAL ASSESSMENT

# FOR JULY, 2006 BOARD

Liebb, Stephen  C-60825                                                              7-20-06

# PSYCHOSOCIAL EVALUATION
# FOR THE BOARD OF PRISON TERMS
# JULY 2006 LIFER HEARING
# SAN QUENTIN STATE PRISON

## PSYCHOSOCIAL ASSESSMENT

I.  <u>Identifying Information:</u>   Mr. Liebb is a 50-year old, Semitic male who is serving a 26-Year to Life sentence for PC 187, First Degree Murder with the use of a weapon, and PC245 (A) assault with a deadly weapon.   The report is based on a review of Mr. Liebb's central files, medical record and a face-to-face interview conducted in the staff offices of San Quentin State Prison.  Mr. Liebb was informed of the limits of confidentiality in that information provided would be included in a report to the Board of Prison Terms.  Mr. Liebb stated that he understood this and was able to demonstrate an understanding of the purpose of the interview.  He denied any need for assistance or for any adaptive aides and stated that he was fully able to participate in the interview. Only Mr. Liebb and the examiner were present at the interview.

Mr. Liebb's developmental history, family history, psychosocial development and sexual orientation, military history, educational history, employment and income history, and substance abuse history have been thoroughly reviewed and presented in previous reports and will not be repeated here.  The reader is referred to the 8-3-99 report by Dr. Carr for this information.

This report is a psychosocial evaluation that was requested by the Board in 2003.  At the time Mr. Liebb was given a 3-year denial in regard to his suitability for parole.  The questions raised by the Board at that time were:
A. Mr. Liebb's violence potential in the free community,
B. The extent to which Mr. Liebb has explored his commitment offense and it's underlying causes.
C. The need for further therapy programs while incarcerated.

II.   <u>Plans if Granted Release:</u>
Housing:
Mr. Liebb has relatives, friends and supporters who would be willing to assist him with reintegrating back into the community. He would not be opposed to paroling to a program or halfway house. He thinks this might be a good idea given the amount of time he has been incarcerated.

Liebb, Stephen C-60825                                                    7-20-06

Employment:
Mr. Liebb has several offers of employment. He has an offer to work as a paralegal for California Prison Focus. He also has an offer from Asian Prisoner Support Committee, a group that provides legal support to lawyers. He has another offer from Sabra Industries, an Israeli food distribution company, working in sales and marketing. He has also received an offer from a cousin who is a medical doctor to work in her office. There is also an opportunity to receive a scholarship from U.C. Irvine for graduate study.

Social Support/Services:
Mr. Liebb has extensive family support from his extended family. His father passed away in April of 2006, at 73 years of age. He had suffered from Alzheimer's disease prior to he death, but according to Mr. Liebb, succumbed to pneumonia. He had last seen his father about a year ago. His brother has been supportive of him and paid the tuition for him to complete a 3-year program in paralegal studies through correspondence.

## CLINICAL ASSESSMENT

III.   Current Mental Status/Treatment Needs
A. Summary Mental Status Evaluation:
Mr. Liebb has a youthful appearance for his age. He is very clean cut and athletic looking. He was well groomed, and dressed in standard CDC inmate clothing. He appeared to be fully alert, and was oriented in all spheres. His thought was coherent, linear and logical with no evidence of thought disorder. He denied any symptoms of visual or auditory hallucinations. His intellectual functioning appeared to be in the above range to superior range, although this was not formally assessed. Speech was normal in rate, rhythm and prosody. His speech has a slight regional accent. Affect ranged from euthymic to neutral. He expressed little emotion when discussing either the loss of his father or his crime. There was no evidence of mood instability or depressed mood, and he reported normal appetite and sleep patterns. His judgment appeared to be good for most situations. His manner was cooperative with no indication of irritation, arrogance, or attempts to control the direction of the interview. He demonstrated capacity for insight into external forces that were operating at the time of his offense, but had much less understanding of internal dynamics that contributed to his homicidal act. For example, he was able to recall and related the sequence of events in precise detail, but seemed not be less aware that anger was a significant factor in the aggressive acts that occurred during the same time period.

B. Current Clinical Diagnoses and Level of Functioning:

| | |
|---|---|
| AXIS I: | V71.01 Adult Antisocial Behavior (by history) |
| | 313.82 Identity Problem (by history) |
| AXIS II: | V71.09 No Diagnosis |
| AXIS III: | None related to mental status |
| AXIS IV: | Stressors: Life Sentence |
| AXIS V: | GAF = 80 |

    C. <u>Current Level of Care</u>: Not a participant in the MHSDS or other mental health treatment at the present time.

    D. <u>Treatment Activities</u>: N/A for mental health. Mr. Liebb participates in self-help activities and Yoga practice.

    E. <u>Medications</u>: No psychotropic medications noted.

    F. <u>Prognosis</u>: His prognosis is good for maintaining present mental status, as he has no major mental illness.

IV.    <u>Review of Life Crime:</u>

A. <u>Inmate's Version of Offense</u>:

Mr. Liebb's version of his life crime is that he was angry with the victim's family over a dispute that had escalated over a period of several months. Mr. Liebb stated that he had been under stress, but was not focused on the conflict with the Diller family on that day. He had decided to take a pleasure ride on his new motorcycle and reported that he came across the victim by chance. He described his mood as stress, anxious, and depressed due to his brother's illness and what he described as an attack by the victim's brother a short time before. He saw the victim's car behind him and observed the car swerve slightly in his direction as the car passed. He took this as a hostile, but not threatening gesture. He decided to follow the victim in order to see if he was going to his brother Arthur's house. Mr. Liebb stated that he was angry with the victim's brother about the attack and "wasn't done with this." His intention was to confront victim's brother when he located him.

The victim double-parked on a side street and waited for a young woman who came out of a building, and got into the car. Mr. Liebb opened the car door and inserted himself into the car, grabbing the steering wheel in order to keep the victim from leaving. At that time, the victim asked, "Stephen what are you doing." He tried to drive the car away in order to shake off Mr. Liebb. At this point Mr. Liebb became angry and hung on to the steering wheel causing the car to crash into a building. The victim ran out of the car toward a park, and entered an equipment shed. Mr. Liebb followed him into the shed and lunged across the counter stabbing the victim once in the chest. As Mr. Liebb withdrew the knife, the victim grabbed the blade with his hand. Mr. Liebb stated, "I saw hurt in his eyes. I let him release the blade. I told him, 'I never did anything to you or your family.'" He heard the victim say, "I love you."

Mr. Liebb put the knife in his pocket and told the crowd that had gathered that the victim had tried to run him over on his bike. He left the area and went back to his apartment, but couldn't get in as he had dropped his keys in the victim's vehicle. He was feeling distraught as he had hurt someone he really cared about. As stated by Mr. Liebb, "Once I saw blood on his hand, I knew that it wasn't what I wanted to do." He attempted to contact friends in the area, but had trouble finding anyone at home. He threw the knife away in a dumpster and called a lawyer friend, and told him that he had stabbed the victim. The lawyer asked him how bad it was. At this point Mr. Liebb did not know that the wound was fatal. He stated that he felt all right when he left the area, because the victim had told him that he loved him. He therefore felt that things were all right between them.

Liebb, Stephen C-60825

7-20-06

Before he took up the lawyer's offer of shelter, he went home to feed and walk his dog. He climbed in the window to get the dog and as he was out walking the dog, he was arrested by the police. When he was questioned by the police, they told him that he was being questioned about a PC187. As a recent law school graduate, Mr. Liebb was not that familiar with the penal code. The police told him that the victim had died and that was when the gravity of what he had done hit him.

B. <u>Relevance of Mental Condition to Life Crime</u>:
Mr. Liebb has no history of serious mental illness. There is no evidence that he was suffering from a mental disorder at the time of his offense. He was under stress due to a brother's serious health problems, career dissatisfaction, and ongoing conflict with friends.

C. <u>Inmate's Level of Insight and Remorse</u>:
Mr. Liebb expressed remorse for his crime and some insight into the attitudes and behavior that lead to his crime. He acknowledges that he was the aggressor in the killing and that his victim had not threatened him in any way, and in fact, made every effort to get away from him.

Mr. Liebb has gained maturity and insight during his years of incarceration. He credits conversations with professional, one on one therapy, and self-help activities for helping him to gain understanding of himself and the reason for his crimes. He stated that he has learned that he had a sense of insecurity, low self-esteem and a need to please others. He also tended toward perfectionism, and found it difficult for him to forgive himself and others for their shortcomings. Mr. Liebb also acknowledges that he was depressed around the time of the crimes although he had trouble admitting that to himself as he "thought that only women became depressed." He also found it difficult to adhere to the constraints of Judaism with which he had been strictly raised. There was also a dissatisfaction with his chosen profession.

D. <u>Causative Factors</u>:
There is no evidence that a major mental illness was a causative factor in the commission of Mr. Liebb's offense. Likewise, he was not under the influence of alcohol or drugs at the time of the offense. He admits that he became angry with the victim and attacked him, first by forcibly entering the car, and then by pursuing him and stabbing him. Since the victim was no threat to him at that time, the most immediate causative factor would have been Mr. Liebb's lack of impulse control. There was, a personal history between Mr. Liebb and the victim, that resulted in Mr. Liebb being emotionally aroused to the point where he aggressively pursued the victim and stabbed him. This occurred even though there were witnesses in the area and the victim apparently did nothing to provoke Mr. Liebb at the time of the attack. In fact, Mr. Liebb reported that the last thing the victim said to him was, "I love you." For whatever the reason, encountering the victim in the presence of a female companion, who was apparently unknown to Mr. Liebb, produced an emotional state in which Mr. Liebb lost his judgment, and was unable to control his aggression. The presence of the other party was not enough to constrain Mr. Liebb. This act, combined with other instances when Mr. Liebb was involved in assaultive behavior, in the presence of witnesses,

would suggest that he was not able to control his anger or aggression under certain circumstances, even at times when he was not directly threatened by the victim.

Although Mr. Liebb was under stress at the time of his offense, this does not explain why he became a violent individual when he had shown no previous history of interpersonal violence. It would seem that part of his confusion of identity was around how to conduct himself as a young man vis-à-vis other young men, and maturely expressing his sexuality. Mr. Liebb was upset when the epithet that was the equivalent of the derogatory term, "fag," was used by members of the Diller family to insult him or a friend of his. He also had an inappropriate conversation with the victim's mother at one point during the conflict with the family where he told the mother, in anger, about a sex act the daughter had performed on him. This behavior was strikingly immature for a man in his mid-20's. As part of his identity crisis, Mr. Liebb seemed to have developed a hyper-aggressive persona, as someone to be reckoned with. It should be noted that that quality is not evident in him today.

VI.     Assessment of Dangerousness:
The following is a risk assessment and not intended to predict future dangerousness with complete accuracy. A risk assessment is based on enumeration of factors found to be statistically associated with a greater likelihood of violent behavior. Some individuals found to have a rating of low risk for violence, become violent, while individuals who have factors suggesting high risk for violence, may never commit a future violent act.

Mr. Liebb's rating on the PCL-R would be level 1 (very low), indicating lack of psychopathy. The PCL-R is an instrument for assessing inferred personality traits and behaviors related to a widely understood, traditional concept of psychopathy. Using the Violence Risk Assessment Guide (VRAG), an actuarial instrument for predicting violent recidivism, Mr. Liebb has the following factors that have been shown to be related statistically to violent recidivism: never married, young age at index offense, and male victim. Based on actuarial probability, the probability of violent recidivism over a 7-year period would be low (0.12). This method is not predictive for any one individual but gives a probability based on the performance of a group of individuals with similar characteristics.

A. Violence History:
Mr. Liebb did not have a significant pattern of exposure to violence or participation in violence as a child. Mr. Liebb reported that he was not raised in a home where there was abuse or any form of domestic violence. As a child, he saw a few fights in his neighborhood that resulted from hostility toward ethnic or religious groups by other children. He had an interest in boxing as a younger man, but did not take up prizefighting. He had no history of violent criminal offenses prior to his present case. During his prosecution for the murder of Mr. Diller, Mr. Liebb was also prosecuted for an assault with a baseball bat that had occurred two months earlier.

A. In a Controlled Environment:
Mr. Liebb has not received a rules violation since 1991. He received on CDC 115 for violent behavior in 1989, when he was involved in a fight with another inmate. Since he has been

violence free for 15 years, he would be at low risk of violent behavior in a controlled environment.

B. If Released to the Community:
Based on an actuarial assessment, Mr. Liebb would be considered at low risk for violent recidivism. Mr. Liebb has undergone several experiences that have helped him understand the magnitude of the loss suffered by the victim's family and difficulties encountered by his own family as a result of his crime. He lost his own father in April of this year, and has come to understand grief through observing his family's reaction to the loss of his father, although he was not able to be with his family during the time of mourning. His mother and sister also attend a support group for people who have an incarcerated family member. This has given him a perspective on how his crime has impacted his family members. He is also aware that the victim's family continues to oppose his consideration for parole to the community. While he has been able to make positive changes in himself so that he considers himself to no longer be the same person he was at the time of the crime, the victim's family is still very much affected by the crime.

Clinician Observation/Comments/Recommendations:
1. As stated previously, Mr. Liebb's potential for violence would be low in a controlled setting. If released to the community, there is no reason to believe that his risk for future violence would be greater than that of the average parolee. He has the means to support himself in the community without resorting to criminal behavior. Mr. Liebb has job skills, a history of good work performance, and supportive family members. He is willing to comply with all conditions of parole.

2. Even though Mr. Liebb has not historically had a problem with the use of drugs and/or alcohol any future use would be likely to alter the risk for future violent acts.

    Given that there is no clear motivation for Mr. Liebb's unprovoked pursuit and stabbing of the victim, it would be beneficial for Mr. Liebb to obtain therapy to further explore the reasons for the fatal assault, as well as other instances of assaultive behavior.

3. There is no evidence in Mr. Liebb's presentation of any severe mental disorder at this time. He has, however, spent much of his life conforming to strict religious and cultural expectations that allowed him little room to develop an authentic sense of self. He has gained a sense of purpose while incarcerated by assisting other inmates with legal matters. He also uses writing as a means of self-expression. It would appear that he is better able to tolerate insults, has a better sense of who he is and is more sensitive to the needs of others.

4. If released to the community, Mr. Liebb would benefit from supportive service to increase his ability to adapt to the demands of an environment that he has not been part of for the past 20 years. He is considering programs that would offer transitional services. While he is not an institutionalized inmate in terms of interest or perspective, such a change could be destabilizing in light of his past difficulty with adjusting to a radically different and less structured environment. This is not to say that Mr. Liebb

Liebb, Stephen C-60825                                           7-20-06

would become violent in response to this challenge, but merely to recognize that he is 50 years old and has always lived in highly structured social environments.

5. Given his lack of a mental disorder, is therefore recommended that case factors other than psychopathology be considered to determine eligibility for parole at this time.

_____           7-20-06
Michel Lynn Inaba, Ph.D.                    Date
Contract Psychologist