

**FILED**

FEB 1 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name _____LIEBB_____STEPHEN_____
         (Last)                  (First)           (Initial)

Prisoner Number __C-60825_____

Institutional Address _____SAN QUENTIN STATE PRISON, SAN QUENTIN, CA 94974_____

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMENDED PETITION

____STEPHEN LIEBB_____      C-07-5577 CW
Full Name of Petitioner

                                   Case No.(To be provided by the
                                   clerk of court)

vs.

____R. AYERS JR., Warden_____    PETITION FOR A WRIT OF HABEAS CORPUS
     Name of Respondent
  (Warden or jailor)

Read Comments Carefully Before Filling In

When and Where to File

    You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

    If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your

1

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

## A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

    1.    What sentence are you challenging in this petition?

**CHALLENGE TO DENIAL OF PAROLE AT 2006 HEARING**

    (a)  Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

**LOS ANGELES COUNTY SUPERIOR COURT**       **LOS ANGELES, CA.**

        Court                            Location

    (b)    Case number, if known _____

    (c)    Date and terms of sentence ~~1981; 26 yrs to life.~~

    (d)    Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) Yes   No

Where? **San Quentin State Prison**       **San Quentin, CA 94974**

        (Name of Institution)              (Address)

    2.    For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

**First degree murder, one count.**

    3.    Did you have any of the following?

Arraignment: Yes X No ___   Preliminary Hearing: Yes X No ___ Motion to Suppress: Yes X No ___

3

4.    How did you plead?

Guilty _____    Not Guilty  X_____    Nolo Contendere _____

Any other plea (specify) _____

5.    If you went to trial, what kind of trial did you have?

Jury  X___    Judge alone _____    Judge alone on a transcript _____

6.    Did you testify at your trial?  Yes X  No ___

7.    Did you have an attorney at the following proceedings:

(a)    Arraignment  Yes X        No ___
(b)    Preliminary hearing        Yes X        No ___
(c)    Time of plea  Yes ___        No ___
(d)    Trial    Yes  X        No ___
(e)    Sentencing    Yes X        No ___
(f)    Appeal        Yes X        No ___
(g)    Other post-conviction proceeding    Yes ___        No X

8.    Did you appeal your conviction?    Yes X  No ___

(a)    If you did, to what court(s) did you appeal?

Court of Appeal    Yes X    No ___    1983        Affirmed
                                    (Year)            (Result)

Supreme Court of
California        Yes ___    No ___    _____        _____
                                    (Year)            (Result)

Any other court    Yes ___    No ___    _____        _____
                                    (Year)            (Result)

(b)    If you appealed, were the grounds the same as those that you are raising in this petition?
                Yes ___  No X

(c)    Was there an opinion?    Yes X    No ___

(d)    Did you seek permission to file a late appeal under Rule 31(a)?
                Yes ___        No X

THIS PETITION CONCERNS DENIAL OF PAROLE NOT MY ORIGINAL CONVICTION.

If you did, give the name of the court and the result:

---

9.    Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?    Yes          No **X**

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

(a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.    Name of Court _____

Type of Proceeding _____

Grounds raised (Be brief but specific):

a.    _____

b.    _____

c.    _____

d.    _____

Result _____ Date of Result _____

II.    Name of Court _____

Type of Proceeding _____

Grounds raised (Be brief but specific):

a.    _____

b.    _____

c.    _____

d.    _____

Result _____ Date of Result _____

III.    Name of Court _____

Type of Proceeding _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result _____ Date of Result _____

    (b)    Is any petition, appeal or other post-conviction proceeding now pending in any

court?    Yes __ No __

_____

(Name and location of court)

## B. GROUNDS FOR RELIEF

    State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you need more space. Answer the same questions for each claim.

    Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. § 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

    Claim One: _____ PLEASE SEE ATTACHED _____

7

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

_____

_____

_____

Do you have an attorney for this petition?    Yes ___ No X

If you do, give the name and address of your attorney:

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on ___2/8/08___          _Stphn Liall_
            Date                  Signature of Petitioner

( rev. 5/96)

9

## INTRODUCTION

In accordance with this Court's order of February 5, 2008, dismissing the petition with leave to amend [ Liebb v. Ayers, No. C 07-5577 CW], petitioner submits the following Amended Petition for Writ of Habeas Corpus.

This petition addresses violations of petitioner Stephen Liebb's state and federal due process rights at his fifth parole hearing held on July 27, 2006, before the California Board of Parole Hearing.

Petitioner was convicted of one count of first-degree murder with the use of a knife in Los Angeles County [Case Number A083014] and sentenced to a term of 25 years to life plus one year. At his third appearance before the Board of Prison Terms on July 17, 2003, petitioner was denied parole for three years based on the commitment offense being carried out "in an especially cruel manner." [July 17, 2003 Decision attached as Exhibit A] (Petitioner's claims of due process violations at his 2003 Board hearing are the subject of a pending habeas petition Liebb v. Brown No C 04-4213 CW)

The 2003 Board panel also cited other factors for denying parole and made specific recommendations for petition to be found suitable for parole. The 2003 panel stated:

1. "The prisoner has programmed in a limited manner while incarcerated. He has failed to upgrade vocationally and has not sufficiently participated in beneficial self-help and therapy programs.
2. The panel also found "that the prisoner's gains are recent, and he must demonstrate an ability to maintain gains over an extended period of time."
3. The panel recommended that "[petitioner] remains disciplinary free and, if available, we need for you to upgrade vocationally and educationally. It has been recommended by prior psychologists and it was recommended by the previous Board. And if available, participate in self-help and cooperate with clinicians in the completions of a clinical evaluation. We're asking for a new psychological evaluation."

The 2003 panel denied parole for three years, during which time petitioner completed a Paralegal correspondence course for which he

1

received a certificate; participated in numerous self-help programs and cooperated in a new psychological evaluation.

Petitioner's crime and programming are summarized in the Life Prisoner Evaluation Report prepared by Correctional Counselor Zanni for the July, 2006 Board Hearing **[Attached as Exhibits B]**

The Psycho-Social Assessment for the July, 2006 Hearing prepared by Contract Psychologist Michel Lynn Inaba, Ph.D **[Attached as Exhibit C]** stated:

"Mr. Liebb's rating on the PCL-R would be level 1 [very low] indicating lack of psychopathy." Dr. Inaba concluded that: "Given his lack of mental disorder, [it] is therefore recommended  that case factors other than psychopathology be considered to determine eligibility at this time."

Petitioner appeared before the Board of Parole Hearings on July 27, 2006 for the fourth time for a parole consideration hearing. Petitioner was again found unsuitable for parole and was denied parole for one year despite having complied with all of the previous panel's recommendations. The panel denied parole based on the commitment offense being "carried out in an especially cold, cruel, callous and calculated manner" and a finding that his gains were recent. **[See transcript of July 27, 2006 hearing attached as Exhibit D]**

Petitioner appeared before the Board of Parole Hearing on September 26, 2007 and was denied parole for <u>two years</u> despite having complied with all of the recommendations of the 2006 panel. Petitioner asks this Court to take judicial notice of his subsequent parole hearing. See Pirtle v. California Board of Prison Terms, No CIV S-04-0518 FCD KJM P. 2007 U.S. Dist. LEXIS 28218, at *59 (E.D. Cal. Apr 17, 2007), motion for reconsideration denied, 2007 U.S. Dist. LEXIS 53445 (E.D. Cal. July 24, 2007).

Petitioner asserts that the panel of July 27, 2006 violated his state and federal due process rights by failing: to set his term in accordance with Penal Code Section 3041, et seq; by engaging in an arbitrary and unconstitutional determination that his crime was particularly egregious; by failing to adduce any evidence that was probative of a finding that he is currently dangerous; by failing to find him suitable for parole in accordance with the Board Regulations set forth in sections 2400-2411 of the California Code of Regulations; and by violating the due process requires by applicable case law. Petitioner also maintains that there was **no evidence** underlying the "reasons" the Board articulated for finding him unsuitable for parole and more importantly NO EVIDENCE that he is currently dangerous.

Petitioner contends that the Board's conclusion that he is unsuitable for parole and its failure to set a term despite his accomplishments while incarcerated and despite having served over twenty-five years (not including earned good time credits) on a sentence of twenty-six years to life, is clearly erroneous.

## PETITIONER'S CONTENTIONS

1. The Board failed to apply the statutory requirements of PC Section 3041.

2. Petitioner's due process rights were violated by the Board's failure to find him suitable for parole.

3. The Board improperly and arbitrarily characterized petitioner's crime as being exceptionally egregious.

4. There was no reliable evidence before the Board that petitioner was currently dangerous. There was no evidence with any indicia of reliability underlying the reasons the Board gave for finding petitioner unsuitable for parole.

5. The panel's decision was arbitrary and capricious and ignored or minimized petitioner's rehabilitative efforts and gains.

3

The panel's recommendations regarding necessary programming lack any basis in the record for their purported "need."

6. The panel's weighty and unreasonable reliance on unalterable factors including the crime itself violate his due process rights. The Board has in effect resentenced petitioner from a term of twenty-five years to life, to life without the possibility of parole.

## TIMELINESS AND EXHAUSTION OF STATE REMEDIES

Petitioner declares under penalty of perjury that he exhausted his state court remedies well within the one-year statute of limitations by filing petitions for writ of habeas corpus addressing the claims in this petition. [See attached declaration in support of exhaustion of state remedies.]

The Federal petition challenging the decision of the July 27, 2006 panel was filed on November 1, 2007. The Board's decision was not final until approximately November 24, 2006 and petitioner did not receive his transcript until November 29, 2006. On that basis alone, the petition is timely.

The petition was filed in the Superior Court on January 2, 2007. [Petitioner notes that he mailed the petition to the Los Angeles County Superior Court on December 13, 2006. The outgoing legal mail logbook page from North Block reflecting that the petition was mailed on December 13, 2006 is attached. However, because petitioner did not receive a conformed copy with a case number from the court, he mailed another copy of the petition and that was filed on January 2, 2007.] The Los Angeles Superior Court denied the petition in an order dated May 29, 2007. (Petitioner attached the Clerk's certificate of mailing which reflects a date of July 20, 2007. Petitioner also includes an order from the Superior Court serving the Attorney General with a copy of the petition on July 19, 2007. Petitioner believes that the date of May 29, 2007 on the Order denying the petition is erroneous.

4

Petitioner filed the petition in the Court of Appeal on August 13, 2007 (Conformed copy of cover page attached) The Court of Appeal denied the Petition on August 21, 2007.

Petitioner filed a petition for review in the California Supreme Court on August 29, 2007 and the California Supreme Court denied the petition for review on October 24, 2007. (Copies of those orders are attached)

Given the tolling periods while the petition was pending in the State Court, the petition was timely filed on November 1, 2007.

All the above referenced supporting documents are included in Attachment A.

Petitioner raised all the claims in this petition in the California state courts. Petitioner includes as Attachment 2, a copy of the petition (without exhibits) filed in the Los Angeles County Superior Court and the Court of Appeal; the additional arguments he presented to the Court of Appeal; and the Petition for Review filed in the California Supreme Court.

Petitioner asserts that the petition should be granted because the state court decision was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.

5

## MEMORANDUM OF POINTS AND AUTHORITIES

## THE HABEAS PETITION SHOULD BE GRANTED BECAUSE THE STATE COURT DECISION WAS CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, OR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS

### A. PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN PAROLE AND A RIGHT TO A PAROLE HEARING THAT COMPLIES WITH DUE PROCESS.

It is appropriate to look to lower Federal Court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of the law. See Duhaime v. Ducharme, 200 F. 3d 597, 598 (9th Cir. 1999)

The Ninth Circuit has held that California's parole scheme creates a cognizable liberty interest in parole because Penal Code Section 3041 uses mandatory language and is similar to the Nebraska and Montana statutes addressed in Greenholtz and Allen respectively. [Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7 (1979) and Board of Pardons v. Allen, 482 U.S. 369, 371 (1987)] As the Ninth Circuit has explained: "Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process," and that interest arises "upon the incarceration of the inmate." Biggs v. Terhune, 334 F. 3d 910, 914-915 (9th Cir. 2003). See Sass v. California Board of Prison Terms (9th Cir 2006) 451 F. 3d 1123

The Board may not make a decision that is "otherwise arbitrary." Irons v. Carey, 479 F. 3d 657, 662 (9th Cir. 2007), citing Sass, 461 F. 3d at 1128-29 and Superintendent v. Hill, 472 U.S. 445, 457 (1985). Parole suitability is "framed by the statutes and regulations governing parole suitability determinations in the relevant state." The Court must "look to California law to determine the findings that are necessary to determine whether the state court decision holding that these findings were supported by 'some evidence'…constituted an unreasonable application of the 'some evidence' principle articulated in Hill." Irons, Id.

"Some evidence" that an inmate is currently dangerous must support a decision to find an inmate is unsuitable for parole in accordance with California statutes and regulations.

In *In re Dannenberg* (2007) 156 Cal. App. 4th, 1387, Dannenberg "struck multiple blows to his wife's head with a pipe wrench. Bleeding profusely, she then 'fell or was pushed' into a bathtub full of water, where she drowned." (Id. at p. 1394.) The court acknowledged that the second-degree murder demonstrated a callous disregard for human suffering; yet, it concluded that the offense did not provide the requisite evidence that Dannenberg was presently dangerous. (Id. at p. 1398.)

The Court of Appeal found that "[n]o evidence in the record...supports a conclusion...that Dannenberg currently poses an unreasonable risk of danger to society if released." (In re Dannenberg, supra, 156 Cal. App. 4th at p.1391.)

This is also illustrated by Hayward v. Marshall (9th Cir. 2008)__F. 3d___[2008 WL 43716] In Hayward, the court ruled that the Governor's 2003 reversal of parole based on the gravity of the petitioner's 1978 second-degree murder violated due process. (2008 WL 43716 at *8.) Hayward demonstrated the Biggs warning that the parole authority's "continued indefinite reliance on an unchanging factor, such as the circumstances of the commitment offense, pre-conviction criminal history, or other past conduct," may ripen into a due process violation in the face of a longstanding showing of reform and rehabilitation. (2008 WL 43716 at *7.)

Similarly, when viewed fairly and in context, there is no evidence that supports a determination that petitioner's release would unreasonably endanger public safety.

## B. THE CALIFORNIA PAROLE SCHEME REQUIRES THAT PAROLE SHALL NORMALLY BE GRANTED

The California legislature has clearly expressed its intent that when murderers-who are the great majority of inmates serving indeterminate sentences-approach their minimum eligible parole date, the Board "shall normally set a parole release date." (Pen. Code Section 3041, subd. (a).)

The Board's authority to make an exception based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is "normally" to be granted."

In 2006, 4,657 parole hearings were conducted. Parole was granted to only 23 inmates. The Board of Parole Hearings combined with the governor rejected 99.5 per cent of lifer's applications for parole.
[Source: California Department of Corrections and Rehabilitation; Governor's Office, as reported in San Francisco Chronicle]

Petitioner contends that as a matter of law and logic, a parole granting rate of one half of one per cent fails to comply with the mandate of Penal Code Section 3041 (a) which requires that parole is normally to be granted. Petitioner maintains that applying the exception of Section 3041 (b) to well over ninety percent of the applicants considered by the Board violates due process.

**D. THE MATRIX IS DESIGNED TO QUANTIFY THE FACTORS PRESENT IN MURDERS CONSIDERED BY THE BOARD. THE BOARD VIOLATES DUE PROCESS IN DENYING PAROLE BASED ON A CRIME BEING "EXCEPTIONAL" WHEN THE MATRIX ALREADY TAKES THOSE FACTORS INTO ACCOUNT**

The Board ignores the existence and purpose of the matrix when considering whether a crime is "especially, heinous, atrocious or cruel." Such a position is untenable. "It is a well-established rule of statutory construction that when a word of phrase as been given a particular scope or meaning in one part or portion of a law it should be given the same scope and meaning in other parts or portions of the law." People v. DeGuzman (2003) 113 Cal. App. 4th 538, 547-548, citing People v. McKay (2002) 267 Ca. 4th 601, 621

Since it is clear within one part of the statutory scheme governing parole that there is a mandatory framework for quantifying the severity of any given instance of murder, it seems equally clear that the Board is precluded from adopting contrary standards for similar an related parts of the same scheme.

8

Federal case law explains that the Board' decision to deny parole in this case based on a finding the crime was exceptional masks an underlying decision that the crime is "more serious than the 'ordinary' [murder] contemplated by the published guidelines. There is no basis in law for such a distinction. The guidelines clearly indicate the class of offense severity into which case falls, based on the act committed..."

"...It is unreasonable and impermissible for the [Board] to base a decision to continue beyond the guidelines on the same factors that went into formulating the guidelines in the first place. No one disputes that this was a serious crime, but the factors of seriousness indicated by this record are included in the guidelines themselves. Thus, something more must be stated. The [Board] however, has failed to state any other basis that is supported by any evidence." Little v. Haden, 504 F. Supp. 583, 564 (1980)

## D. THE "SOME EVIDENCE" STANDARD REQUIRES THAT THERE BE SOME EVIDENCE THAT IS PROBATIVE OF CURRENT DANGEROUSNESS. THE BOARD'S FINDINGS MUST BE SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE

Parole unsuitability factors must be supported by a preponderance of the evidence. In re Rosenkrantz (2002), 29 Cal. 4th 616 at p. 670. The board failed to state that its findings were made in accordance with this burden of proof.

Court's reviewing the board's determinations have held that due process requires that "some evidence" support the board's determination and that the evidence relied upon must possess "some evidence of reliability." Caswell v. Calderon, 353 F. 3d 832, 839 (9th Cir. 2004). See Cass v. Woodford, 2006 WL 1304953 at *9 (S.D. Cal. 2006)

It is not enough that there is some evidence to support the factors cited for denial of parole; that evidence must also rationally support the core determination required by the statute before parole can be denied, i.e. that a prisoner's release will unreasonably endanger public safety. In re Lee (2006) 143 Cal. App. 4th 1400, 1408.

9

Because the overarching consideration is public safety, the test in reviewing the Board's decision denying parole "is not whether some evidence supports the reasons [the board] cites for denying parole but whether some evidence indicates a parolee's release unreasonably endangers public safety." In re Barker (2007) 151 Cal. App. 4th 346, 366, italic omitted.)

The Federal "Some Evidence" standard as applied in Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F. Supp. 2d 1063 and Martin v. Marshall (N.D. Cal. 2006) 431 F. Supp. 2d 1038 finds that an aging commitment offense falls short of providing "some evidence" sufficient to justify a denial of parole. See also, Willis v. Kane (N.D. Cal. 2007) 485 F. Supp. 2d 1126

Petitioner asserts that the "some evidence "standard is not appropriate at the fact finding level but only suitable for use by an appellate court in the context of reviewing lower court decisions. The Supreme Court explained in a plurality opinion that it has utilized the "some evidence" standard not as a standard of proof, but rather as a standard of review when examining an administrative record developed in an adversarial proceeding. Hamdi v. Rumsfield, 542 U.S. 5507, 124 S. Ct. 2633, 2651, 159 L. Ed. 2d 578 (2004), n. 8

The state courts that adopted *Hill*'s some evidence standard to review parole decision held that prisoners did **not** have a due process liberty interest in parole. In re Powell 45 Cal. 3d 894, 911 (1988) Because the contrary is now established (McQuillion, 306 F. 3d at 902; Rosenkrantz, 29 Cal. 4th at 621; see Sass, 461 F. 3d at 1128), due process certainly demands a finding of something more than "some" (any) evidence in the record to secure a vested liberty interest protected by the Due Process Clause.

No other state whose parole statutes provide a protected liberty interest in parole, or any defined liberty interest allow it to be extinguished by the mere presence of any evidence whatsoever. In Carrillo v. Fabian, 701 N.W. 2d 763 (2005), the Minnesota Supreme Court recently and explicitly held that the some evidence standard of review of a prison disciplinary action established in Hill is inapplicable to the review of a correctional agency's decision affecting an inmate's parole date in a state whose statutes provide a protected liberty interest in parole.

10

The court held, based on the tripartite test prescribed by the Supreme Court, that the "substantial evidence" standard of review is requisite to provide adequate due process protection.

In Santosky v. Kramer (1982) 455 U.S. 745, 767-769, 102 S. Ct. 1388, 71 L. Ed. 2d 599, the High Court explained:

> This Court has mandated an intermediate standard of proof-"clear and convincing evidence"-when the individual interest in a state proceeding are both "particularly important" and "more substantial than mere loss of money." "Addington v. Texas, 441 U.S., at 424, 99 S. ct., at 1808…the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with "a significant deprivation of liberty" or "stigma" [citations]…The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss'" Goldberg v. Kelly, 397 U.S. 254, 262-263, 90 S. Ct. 1011, 1017-18, 25 L. Ed. 2d 287 (1970), quoting Joint Anti-Fascist Refugee Committee v. McGrath, 341U.S. 123, 168, 71 S. Ct. 624, 646, 95 L. Ed. 817 (1951) (Frankfurter, J. concurring).

> Santosky v. Kramer, 455 U.S. 745, at 756, 758 (1982)

This Court should apply the clear and convincing or substantial evidence standard to adjudicate petitioner's constitutional claims.

## E. THE BOARD'S RELIANCE ON THE COMMITMENT OFFENSE AND IMMUTABLE PRE-CONVICTION FACTORS TO DENY PAROLE VIOLATES PETITIONER'S DUE PROCESS RIGHTS

In Biggs v. Terhune (9th Cir. 2003) 334 F. 3d 910 the Ninth Circuit cautioned that continued reliance on the circumstances of the offense could result in a due process violation if the prisoner continually demonstrates exemplary behavior and evidence of rehabilitation.

The Board's decision to deny parole in this case relied on the commitment offense and petitioner's conduct prior to the commitment offense.

11

Petitioner is entitled to have his release date considered by a Board that is free from bias or prejudice. O'Bremski v. Maas, 915 F. 2d 418, 422 (9th Cir. 1990)

Petitioner has no chance of obtaining parole unless the Board holds that his crime was not serious enough to warrant a denial of parole. Irons v. Warden, (E.D. Cal. 2005) 358 F. Supp. 2d 936, 947.)

The commitment offense can lack the power to supply 'some evidence' supporting a denial of parole because of the interplay between two factors-the nature of the crime and the passage of time since its commission.

Petitioner asserts that the circumstances of his crime of one count of first-degree murder do not amount to a particularly egregious crime. Petitioner attaches a copy of a letter from the prosecutor in his case indicating that a plea to a second-degree murder was offered. **[Letter from Judge Marcus attached as Exhibit E]**

Petitioner was convicted based upon the legal construct of lying in wait. A single stab wound to the chest and what is described as a defensive wound to the hand were inflicted on the victim. Petitioner maintains that there was no excessive violence beyond the minimal elements necessary to convict him of the offense

.

Petitioner was denied parole based on the gravity of the commitment crime, the circumstances of which can never change. Therefore, the Board's continued sole reliance on the commitment offense will essentially convert petitioner's sentence of life with the possibility of parole into a sentence of life without the possibility of parole.

"[T]he measure of atrociousness is not general notions of common decency or social norms for by that yardstick all murders are atrocious." In re Lee (2006) 143 Cal. App. 4th 1400, 1401. Viewed under the appropriate guidelines, petitioner's crime does not qualify as unusually calculated, cruel or callous. He did not taunt the victim or gloat over his distress. See People v. Misa (2006) 140 Cal. App.4[th] 937. 842-843.

12

The California Court of Appeal in **In re Elkins (2006) 144 Cal. App. 4th** discussed the use of the gravity of the commitment offense to support a denial of parole:

"Scott II summarizes the law in this situation. 'The Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense 'alone' is correct [citation], but the proposition must be properly understood. The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being his 'Previous Record of Violence').

Reliance on such an immutable factor 'without regard or consideration of subsequent circumstance' may be unfair [citation], and runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation. [citation]

The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. Thus, denial of release based solely on the basis of the gravity of the commitment offense warrants especially close scrutiny." (Scott II, supra, 133 Cal App. 4th at pp 594-595, fns. omitted.)

The Court of Appeal stated that "it violates due process to deny parole "where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense." (Scott II, supra, 133 Cal. App 4th at p. 598)…"

The Court of Appeal in Elkins  also observed: "We also take into account that whatever facts make a given offense aggravated or mitigated, compared to the hypothetical average are not overlooked or disregarded when the Board sets a release date…A release date is set by a calculation under matrixes Section 2403, subds. (b)-(f) that require the Board to weigh myriad facts of the offense that might be aggravating (Section 2404) or mitigating (Section 2405), including any factors that would have been considered by a judge in choosing a determinate sentence…Thus [the Board]…must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating release currently poses "an unreasonable risk of

13

danger to society." (Section 2402, subd. (a); accord, Pen. Code, Section 3041, subd. (b))."

The Board's reliance on Petitioner's commitment offense, which took place 25 years ago to deny parole, was unreasonable. A plethora of recently issued California state and federal district court decisions uniformly holds that evidence of even particularly egregious facts of commitment offenses is not tantamount to evidence of undue current parole risk absent articulation of a nexus between those entities. Willis v. Kane, 485 F. Supp. 2d 1126, 1135 (N.D. Cal. 2007) ["Notwithstanding the terrible nature of the crime, the critical question the BPH was supposed to decide at the parole suitability hearing was whether 'consideration of the public safety requires a more lengthy period of incarceration for this individual'...Willis' 1983 crime did not provide sufficient evidence to find him unsuitable for parole in 2003."] Martin v. Marshall, 431 F. Supp. 2d 1038, 1049 (N.D. Cal. 2006); Blankenship v. Kane, 2007 WL 1113798 at *10 (N.D. Cal. 2007) ["...the California regulations require...some evidence that the prisoner poses a present danger to society...continued reliance over time on an unchanging factor...the commitment offense...does not provide evidence of a present danger to society"]; Thomas v. Brown, 2006 WL 3783535 at *6 (N.D. Cal. 2006]; Rosenkrantz v. Marhsall, 444 F. Supp 3d. 1963, 1086 (C.D. Cal. 2006)

## F. THE BOARD'S DETERMINATION THAT A CRIME IS PARTIUCLARY CRUEL OR EGREGIOUS IS MADE IN AN ARBITRARY AND UNCONSTITUTIONAL MANNER

The Board's determination that petitioner's crime was  especially cruel or egregious is unconstitutionally vague and standard less. See United States v. Doremus (9th Cir. 1989) 888 F. 2d 630, 634.

The Board relies on any fact of the crime to bolster its conclusion that the crime is particularly egregious. The Board makes a determination that virtually ALL life crimes are particularly egregious.

The Board's characterization of petitioner's crime as exceptional was arbitrary since the Board and governor routinely and invariably characterizes all offenses carrying life terms as exceptional. Petitioner asks this Court to take judicial notice of the order in **MIKE NGO On Habeas Corpus [Superior Court of Santa Clara, No. 127611, August 30, 2007]** where the

14

Honorable Linda Condron found comprehensive evidence indicating that the state's Board of parole hearings completely disregards the detailed standards and criteria of the parole release statute, 15 CCR Section 2402 (c) and thereby denies prisoners' due process rights.

The Honorable Judge Condron found:
"In summary, when every single inmate is denied parole because his or her crime qualifies as a Section 2402(c) (1) exception to the rule that a parole date shall normally be set, then the exception has clearly swallowed the rule and the rule is being illegally interpreted and applied. When every single life crime that the Board examines is "particularly egregious" and "especially heinous, atrocious or cruel" it is obvious that the Board is operating without any limits and with unfettered discretion."

Based on the arbitrary characterization of every murder as being exceptional, the Board's decision denying parole for petitioner is per se invalid because he was denied his constitutional right to be heard by an impartial decision-maker. See Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) ("Not only is a biased decision maker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness.")

When an inmate is found suitable for parole, the Board does not deem the crime as particularly egregious. However, the governor when reviewing the Board's determination may disagree and consider the crime as particularly egregious and deny parole. At a subsequent hearing the Board may again classify the crime as particularly egregious.

The change in classification of the very same crime from being non-exceptional to particularly egregious demonstrates the arbitrariness of the classification process itself.

Petitioner asks this Court to take judicial notice of the discovery orders issued in his petition in **LIEBB v. BROWN No, C-04-4213 (CW (JL)** and of the record in that case.

The Board's use of uncharged and unproven elements of his crime to continue denying parole violates petitioner's constitutional right to a jury trial. See Aprendi v. New Jersey, 530 U.S. 466, 490.

15

## G. THE BOARD'S FINDING THAT PETITIONER'S GAINS WERE RECENT LACK EVIDENTIARY SUPPORT AND ARE NOT EVIDENCE OF UNSUITABILITY

The Board found that petitioner's gains were recent. This conclusion is refuted by over two decades of positive programming within prison as is documented in the Board Report. Compliance with the Board's recommendations is a factor to be considered in favor of suitability and release no matter how longstanding or recent it is. See In re Lee (2006) 143 Cal. App 4th 1404, 49 Cal. Rptr 3d 931; also In re Elkins (2006) 144 Cal App 4th 475.

Petitioner complied with ALL of the Board's recommendations after being given a three-year denial of parole in 2003. The multi-year denial was based on the Board finding that it was not reasonable that petitioner could make himself suitable prior to three years. After diligently completing every Board requirement, the 2006 Board panel arbitrarily found petitioner unsuitable because his "gains [were] recent.

As Judge Patel noted the [Board] cannot have it both ways: if [it] wants to say an inmate needs to work on anger management it cannot ignore it when the inmate works on anger management. Thomas v. Brown 2006 U.S. Dist. LEXIS 94460

## H. CONTINUED RELIANCE ON THE COMMITMENT OFFENSE HAS DISTORTED THE BOARD'S DISCRETION

While a denial of parole by the Board in one case may appear reasonable when it cites standardized reasons for denying parole, when dozens of decisions are read in seriatim, it is apparent that the Board has an ultra vires policy of using the crime itself to deny parole to virtually every inmate serving a life-term for murder. Petitioner has a due process liberty interest in "not being denied parole for arbitrary or impermissible reasons" [Meachum v. Fano, 427 U.S. 215, 226 (19760] or as a result or "flagrant or unauthorized action." [Monroe v. Thigpen, 932 F. 2d 1437, 1442 (11th Cir. 1991)] The Board fails to give individualized discretion to inmates serving life terms by invoking the crime itself to deny parole in virtually every case it considers.

16

## CONCLUSION

The commitment offense no longer supplies any evidence that petitioner posed a danger to public safety. The board failed to articulate a nexus between the commitment offense and a finding that petitioner still posed a danger to public safety.

The Board failed to articulate what it is about petitioner's crime that outweighs all the statutorily mandated parole release standards. The Board systematically uses the fact of a murder conviction, without more, to keep prisoners locked up for the rest of their lives. The role of the parole board is not to resentence the prisoner according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether as of this moment, given the statutory factors, he should be released.

The Board stated no justifiable reasons for denying parole. "The evidence must substantiate the ultimate conclusion that the prisoner's release currently poses an unreasonable risk of danger to the public. It violates a prisoner's right to due process when the Board or Governor attaches significance to evidence that forewarns no danger to the public or relies on an unsupported conclusion." In re Tripp (2007) 150 Cal. App. 4th 306, 313

Respectfully Submitted:    DATED: _2/8/08_

_Steph Liebb_
STEPHEN LIEBB
In Pro Per

17

DECLARATION OF STEPHEN LIEBB

I, STEPHEN LIEBB, declare as follows:

1. I am the petitioner in Case No. C-07-5577 CW, consolidated with
   No. C 04-4213 CW

2. The Federal petition challenging the decision of the July 27,
   2006 panel was filed on November 1, 2007. The Board's decision
   was not final until approximately November 24, 2006 and I did not
   receive the transcript until November 29, 2006. (I include a
   receipt signed by my Counselor Zanni reflecting that I was given
   the transcript on November 29, 2006).

3. I mailed the petition to the Los Angeles County Superior Court on
   December 13, 2006. The outgoing legal mail logbook page from
   North Block reflecting that the petition was mailed on December
   13, 2006 is attached. I did not receive a conformed copy with a
   case number from the court and I did not receive a reply to
   several letters that I wrote to the Clerk of the Los Angeles
   County Superior Court inquiring about the status of the petition.
   To assure that the writ would be filed I mailed another copy of
   the petition. That petition was apparently filed on January 2,
   2007. The Los Angeles Superior Court denied the petition in an
   order dated May 29, 2007. I attach the Clerk's certificate of
   mailing which reflects a date of July 20, 2007. I also include an
   order from the Superior Court serving the Attorney General with a
   copy of the petition on July 19, 2007.

I believe that the date of May 29, 2007 on the Order denying the petition is erroneous.

4. I filed the petition in the Court of Appeal on August 13, 2007 (Conformed copy of cover page attached) The Court of Appeal denied the Petition on August 21, 2007.

5. I filed a petition for review in the California Supreme Court on August 29, 2007 and the California Supreme Court denied the petition for review on October 24, 2007. (Copies of those orders are attached)

6. I raised all of the claims contained in the petition filed in this court in the State Court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE  2.8.08

_Steph Liell_

STEPHEN LIEBB