# EXHIBIT A

# JULY 17, 2003 DECISION

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PRISON TERMS

In the matter of the Life )
Term Parole Consideration ) CDC Number C-60825
Hearing of: )
)
STEPHEN LIEBB )
)
_____ )



CALIFORNIA STATE PRISON, SAN QUENTIN

SAN QUENTIN, CALIFORNIA

JULY 17, 2003

10:25 A.M.


PANEL PRESENT:

CAROL DALY, Presiding Commissioner
R. RODRIGUEZ, Deputy Commissioner


OTHERS PRESENT:

STEPHEN LIEBB, Inmate
CHARLES CARBONE, Attorney for Inmate
DAVID DAHLE, Deputy District Attorney
ARTHUR DILLER, Victim's next of kin
MS. GRANT, Case Records Manager, Victim Services
Representative, San Quentin State Prison, Observer




CORRECTIONS TO THE DECISION HAVE BEEN MADE

     /    No           See Review of Hearing
     /    Yes          Transcript Memorandum



Sandy Tillman, Capitol Electronic Reporting

111

1        CALIFORNIA BOARD OF PRISON TERMS
2                    D E C I S I O N
3        DEPUTY COMMISSIONER RODRIGUEZ: Back on
4    record. All parties are present.
5        PRESIDING COMMISSIONER DALY: The Panel has
6    reviewed all of the information received from the
7    public and relied on the following circumstances
8    in concluding that the prisoner is not suitable
9    for parole and would pose an unreasonable risk of
10   danger to society or a threat to public safety if
11   released from prison. The offense was carried out
12   in a -- in an especially cruel manner. Multiple
13   victims were attacked. One was injured in the 245
14   incident -- or two of them were injured in the 245
15   incident, which is count two, and one was killed
16   in separate incidents. The offense was carried
17   out in a manner which demonstrates a total
18   disregard for inflicting pain or human suffering,
19   and the motive for the crime was unexplainable in
20   relation to the offense in that this crime was
21   unprovoked by the victim on the day in question.
22   And the prisoner was acting out of anger over
23   previous disputes. These conclusions are drawn
24   from the Statement of Facts wherein the prisoner
25   on the date of the murder, the prisoner waited for
26   the victim to arrive at his girlfriend's house and
27   STEPHEN LIEBB    C-60825    DECISION PAGE 1    7/17/03

112

1    when the victim arrived and the girlfriend was
2    getting into the car, the prisoner jumped into the
3    car and as the victim was starting to drive off,
4    grabbed the steering wheel and the result of --
5    that the victim got out of the car and ran with
6    the prisoner pursuing him. The prisoner
7    ultimately stabbed the victim in the chest killing
8    him. Prior to the murder of the victim, Michael
9    Diller [sic] struck victim Gold and Arthur Diller
10   with a baseball bat, which is count two of this
11   sentencing. The prisoner has on previous
12   occasions inflicted or attempted to inflict injury
13   on a victim. He has a record of assaultive
14   behavior. He has an escalating pattern of
15   criminal conduct and -- actually he has an
16   escalating pattern of violence and he has a
17   history of unstable and tumultuous relationships
18   with others. His unstable social history and --
19   includes being out of control about three months
20   prior to the murder and where there were two or
21   three incidents where he had assaulted other
22   parties. The prisoner has programmed in a limited
23   manner while incarcerated. He has failed to
24   upgrade vocationally and he has not sufficiently
25   participated in beneficial self-help or therapy
26   programs. The Panel makes the following findings,
27   STEPHEN LIEBB    C-60825   DECISION PAGE 2    7/17/03

113

1   that the prisoner's gains are recent, and he must
2   demonstrate an ability to maintain gains over an
3   extended period of time.  And in view of the
4   prisoner's lack of program participation, there is
5   no indication that the prisoner would behave
6   differently if paroled.  Nevertheless, the
7   prisoner should be commended for the fact that he
8   is getting exceptional work reports that his work
9   skills are always rated above average and that
10  prior to coming to prison, he did receive his law
11  degree at UCLA and his Bachelor of Science in
12  marketing.  And he has been taking some education
13  courses, second language being Spanish course
14  while he is in prison.  And he has been working as
15  a food services clerk.  He does have -- has been
16  taking a meditation class.  He has been involved
17  in the Father's program and he did receive one-on-
18  one therapy back in the middle '80s.  However,
19  these positive aspects of behavior -- of his
20  behavior do not outweigh the factors of
21  unsuitability.  In a separate decision, the
22  hearing Panel finds that the prisoner has been
23  convicted of murder, and it is not reasonable to
24  expect that parole would be granted at a hearing
25  during the next three years.  The prisoner
26  committed the offense in an especially cruel
27  STEPHEN LIEBB   C-60825   DECISION PAGE 3   7/17/03

114

1 manner. Specifically, the prisoner, having an
2 ongoing dispute with the victim and his family, on
3 the date of the murder, he was waiting for the
4 victim to arrive at his girlfriend's house. When
5 he jumped into the car that the victim was
6 driving, and after the car careened out of control
7 and the victim got out to run, the prisoner
8 pursued him, stabbing him in the chest, and killed
9 him. Multiple victims were attacked with two
10 being injured with a baseball bat and one killed.
11 Even though these were separate incidents, he was
12 sentenced for both of these. The offense was
13 carried out in a very dispassionate and a very
14 calculated manner because he was waiting for the
15 victim and in order to confront him. The offense
16 was carried out in a manner which demonstrates a
17 total disregard for human suffering, and the
18 motive for the crime was unexplainable and in
19 relation to the offense in that this was totally
20 unprovoked on the day the murder was committed.
21 The prisoner has a prior record of violent
22 behavior in that the prisoner assaulted two
23 victims with a baseball bat, which was count two,
24 he was -- assaulted a library monitor at UCLA by
25 putting a knee to the groin of the victim and
26 threats had been made to the victim's family that
27 STEPHEN LIEBB    C-60825    DECISION PAGE 4    7/17/03


115

1   he intended to kill the entire family including
2   himself as was outlined in the probation officer's
3   report.  The prisoner has a history of tumultuous
4   relationships with others and especially in the
5   few months leading up to this crime and all of
6   the disagreements that were going on with the
7   Diller family.  A recent psychological report
8   dated 8-3-99 and authored by Dr. L. Carr, contains
9   some inaccurate information regarding the
10  prisoner's self-help and the prisoner has not
11  completed necessary programming which is essential
12  to his adjustment and he needs time to gain such
13  programming.  He has failed to participate in and
14  complete a vocational trade and self-help.  The
15  other concerns that I think are noteworthy is in
16  the current Board report, the counselor notes that
17  there is some concern as to whether the anger
18  stress related issues that led up to the violence
19  in the instant offense has been properly addressed
20  There is limited documentation information in the
21  Central File related to participation in self-help
22  and therapy, anger management or Alternatives to
23  Violence.  Liebb reports that he has read self-
24  help books, practices tai chi and yoga to deal
25  with stress.  Liebb feels he has dealt with his
26  anger and stress related issues.  Even though we
27  STEPHEN LIEBB    C-60825    DECISION PAGE 5    7/17/03

1  do acknowledge that the counselor goes on to state
2  that he feels Liebb would pose a low degree of
3  threat should he be released, I think his concerns
4  are very valid. Therefore a long period of
5  observation and evaluation of the prisoner is
6  required before the Board should find the prisoner
7  suitable for parole. We just ask that you remain
8  disciplinary free, and, if available, we need for
9  you to upgrade vocationally and educationally. It
10 has been recommended by prior psychologists and it
11 was recommended by the previous Board. And, if
12 available, participate in self-help and cooperate
13 with clinicians in the completion of a clinical
14 evaluation. We're asking for a new psychological
15 evaluation, and in stating that the Panel's belief
16 that the prisoner's current mental health is an
17 important issue. And in the new full evaluation,
18 the Panel requests the clinician specifically
19 address the following: The prisoner's violence
20 potential in the free community, the extent to
21 which the prisoner has explored the commitment
22 offense, it comes to -- and come to terms with the
23 underlying causes and the need for further therapy
24 programs while incarcerated. And we're also
25 asking the psychologist to read the transcript of
26 this hearing to understand the concerns and the
27 STEPHEN LIEBB   C-60825   DECISION PAGE 6   7/17/03

1   questions that have been raised by the Panel
2   members and by the District Attorney with regard
3   to the commitment offense and the acceptance -- or
4   the understanding of the underlying reasons.
5   Mr. Liebb, I think what was kind of disappointing
6   -- because when I read this case last night and I
7   was looking at it and I thought, yeah, you are
8   different than a lot of inmates, but I've
9   addressed other inmates in here, doctors, I don't
10  know if I've had another lawyer.  But very, very
11  professional people who did one act that got them
12  in prison.  So there are peers here in prison.
13  And they have attended programs and things.  For
14  you to say that you don't want to be in a program
15  that isn't with your peers, you know, the whole
16  idea of attending these classes is to interact
17  with other people, to maybe understand the
18  motivation and the underlying reasons as to why
19  they committed their crimes.  I find that your
20  argument for not attending self-help very weak and
21  I find your argument in saying that you already
22  have a law degree.  I know that you're doing a lot
23  of legal work here.  And, you know, perhaps you
24  should use your marketing degree when you get out,
25  but to go along with what the Board has
26  recommended of you in the past specifically with
27  STEPHEN LIEBB   C-60825   DECISION PAGE 7   7/17/03

118

1   self-help. I think you need to be -- pay very
2   close attention. I think when you get a
3   transcript of this hearing, that you need to read
4   everything and really see what the concerns are
5   and try to address them. I don't see anything at
6   all that gives me any comfort that you have taken
7   enough of the self-help classes to be assured that
8   you know how to control your anger. So with that,
9   do you have any comments, Commissioner?
10          DEPUTY COMMISSIONER RODRIGUEZ: No comments.
11          PRESIDING COMMISSIONER DALY: Okay, that
12  concludes the hearing. It's 2:10 p.m.
13          DEPUTY COMMISSIONER RODRIGUEZ: Okay,
14  Counsel?
15          ATTORNEY CARBONE: Yes? Thank you.
16          DEPUTY COMMISSIONER RODRIGUEZ: That's his
17  copy.
18          ATTORNEY CARBONE: Go ahead. Thank you.
19  Stephen, did you want this?
20          INMATE LIEBB: Yeah, thank you.
21                      --oOo--
22
23
24
25  PAROLE DENIED THREE YEARS
26  FINAL DATE OF DECISION_____OCT 15 2003_____
27  STEPHEN LIEBB   C-60825   DECISION PAGE 8   7/17/03

119

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, Sandy Tillman, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 118, and which recording was duly recorded at CALIFORNIA STATE PRISON, SAN QUENTIN, at SAN QUENTIN, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of STEPHEN LIEBB, CDC No. C-60825 on JULY 17, 2003, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated August 4, 2003, at Sacramento County, California.

*Sandy Tillman*
Sandy Tillman
Transcriber
**CAPITOL ELECTRONIC REPORTING**