# EXHIBIT E

# LETTER FROM JUDGE MARCUS



*Judge Michael D. Marcus (Ret.)*

1900 Avenue of the Stars, Suite 250
Los Angeles, California 90067

TEL (310) 201-0010
FAX (310) 201-0016

**RECEIVED**

MAY 31 2007

May 29, 2007

Richard R. Ronald, Esq.
Morrison & Foerster
425 Market Street
San Francisco, California 94105-2482

Dear Mr. Ronald:

  *Re: Stephen Liebb*

  In response to your May 7, 2007 letter, I was the prosecutor in Mr. Liebb's matter, and I did offer him a plea to murder in the second degree. Mr. Liebb rejected that offer because he wanted to plead, instead, to voluntary manslaughter. I do not recall what the Los Angeles County District Attorney's written policies were, if any, in 1981 or 1982 as to the acceptance of a plea to a murder charge.

                    Sincerely,

                    Michael D. Marcus

cc: David S. Dahle, Office of the Los Angeles County District Attorney

# ATTACHMENT A

# DOCUMENTS SUPPORTING EXHAUSTION OF STATE REMEDIES

CDC 128-B (REV: 12/96)

NAME: *Liebb, Stephen*          CDC#: *C60825*

I have received a copy of my *July 06*

___ Board Report
___ Hearing Rights
_X_ Hearing Transcripts
___ Other :

**INMATE COPY**

_____          *UJanni CCI 11/29/06*
  Inmate's Signature                    CCI Signature

Date: SEPTEMBER 21, 2005          BPT General Chrono
  *11/24/06*

torney
street
406
· 9453

c/o
Brodersen

U.S.D.C.
Eastern Dist/ CA
2500 Tulare St. #1501
Fresno, CA 93721

---

FRA.
la
St. Rm
250
94612

c/o
Brodersen

Clerk- Recorder
Theresa Nagel
220 S Lassen st #5
Susanville, CA 96B

---

e
t 1+2
y Dos #A
95403

c/o
Brodersen

Clerk- Recorder
Brenda Davis         west
70 W. Hedding st  wing
San Jose, CA 95110

---

eals
District
400
5814

c/o
Brodersen

Clerk- Recorder
John C Thayer
3501 civic center #329
San Rafael, CA 94930

---

irvine county 12-13-06
e st
'4102

Liebb
C-60835
4N69L

c/o
Brodersen

LA county
Superior court
111 North Hill st.
LA. CA, 90012

---

ppeals
e District 11-
#300
A 92101

c/o
Brodersen

Franchise Tax Board
POB 942867
SAC. CA 94267

---

d center 12-13-06
ssenthal
Rd Bvd #344
, CA 94025

c/o
Brodersen

Disclosure officer Ms Ac
Franchise Tax Board
POB  1468
SAC. CA 9581.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DEPT 100

| | | |
|---|---|---|
| Date:     MAY 29, 2007 | | |
| Honorable: PETER ESPINOZA | Judge    JOSEPH M. PULIDO | Deputy Clerk |
| NONE | Bailiff   NONE | Reporter |

(Parties and Counsel checked if present)

BH004542
In re,
STEPHEN LIEBB,
          Petitioner,
On Habeas Corpus

Counsel for Petitioner:

Counsel for Respondent:

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered petitioner's Writ of Habeas Corpus filed on January 2, 2007. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the Board's finding that petitioner is unsuitable for parole (See Cal. Code Reg. Tit. 15, §2402; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667 (hereafter *Rosenkrantz*).)

Petitioner was received in the Department of Corrections on February 15, 1983 after a conviction for first-degree murder with use of a weapon. He was sentenced to twenty-five years to life. His minimum parole eligibility date was January 19, 1997. The record reflects that petitioner and the victim were good friends. Petitioner was managing an apartment building for the victim's family and had been living in an apartment rent free for two years. The family asked petitioner to begin paying rent upon his graduation from law school. Petitioner refused to pay the $150 rent, but remained in the apartment for two months. He then rented the apartment to another tenant charging six months rent in advance, which he pocketed. The dispute between the victim's family and petitioner escalated over the next several months. There were two physical altercations prior to the murder, one of which involved petitioner hitting the victim's brother and an employee with a baseball bat. On July 11, 1981, petitioner attacked the victim as he was entering his girlfriend's car. Petitioner grabbed the wheel and crashed the car into a building. At that point, the victim exited the vehicle and ran to a park chased by petitioner. The victim dove through the window of the park's office building, at which point petitioner stabbed him in the chest through the window. The victim was pronounced dead at the scene.

The Board found petitioner unsuitable for parole after a parole consideration hearing held on July 27, 2006. Petitioner was denied parole for one year. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on several factors, including his commitment offense.

The Court finds that there is some evidence to support the board's finding that "the motive for the crime is inexplicable or very trivial in relation to the offense" (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(E).) "To fit the regulatory description, the motive must be materially less significant (or more "trivial") than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk of danger to society if the prisoner is released than is ordinarily present." (*In re Scott* (2004) 119 Cal.App.4th 871, at 893).

1

| Minutes Entered |
|---|
| 05-29-07 |
| County Clerk |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| | | |
|---|---|---|
| Date:        MAY 29, 2007 | | |
| Honorable: PETER ESPINOZA | Judge | JOSEPH M. PULIDO | Deputy Clerk |
| NONE | Bailiff | NONE | Reporter |

|  | (Parties and Counsel checked if present) |
|---|---|
| BH004542<br>In re,<br>STEPHEN LIEBB,<br>        Petitioner,<br><br>On Habeas Corpus | Counsel for Petitioner:<br><br><br>Counsel for Respondent: |

In this case, petitioner killed his friend due to a dispute over rent money after living rent-free in an apartment owned by the victim's family for two years. The Board was correct in finding that this motive is materially less significant than those which conventionally drive people to commit murder.

     Accordingly, the petition is denied.

     The clerk is directed to give notice to petitioner and the Office of the Attorney General.

     A true copy of this minute order is sent via U.S. Mail to the following parties:

Stephen Liebb
C-60825
San Quentin State Prison
San Quentin, California 94964

Department of Justice
Office of the Attorney General of the State of
California
110 West A Street, Suite 1100
San Diego, CA 92101
Attn.: Cynthia Lumely

Minutes Entered
05-29-07
County Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| Date: | JULY 18, 2007 | | | |
|---|---|---|---|---|
| Honorable: | PETER ESPINOZA | Judge | JOSEPH M. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH004542
In re,
STEPHEN LIEBB,
        Petitioner,
On Habeas Corpus

Counsel for Petitioner:

Counsel for Respondent:

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court acknowledges the receipt of the petitioner's writ of habeas corpus on January 2, 2007.

Respondent Warden was not served with a copy of the petition. Petitioner filed two copies of his petition with the Court. Accordingly, the clerk is directed to mail a copy of the petition for writ of habeas corpus, along with notice of this order, to the Office of the Attorney General, P.O. Box 85266, San Diego, California 92186-5266 to the attention of Cynthia Lumely.

This petition is forwarded to the Office of the Attorney General for safe-keeping and for future use. The petition should be kept in the event an Order to Show Cause should issue by this Court or in the event the petition is required for any purpose by this or any other Court. This Court will not reproduce any portion of the record in the future.

The clerk is directed to give notice to petitioner and the Office of the Attorney General.

A true copy of this minute order is sent via U.S. Mail to the following parties:

Stephen Liebb
C-60825
San Quentin State Prison
San Quentin, California 94964

Department of Justice
Office of the Attorney General of the State of
California
110 West A Street, Suite 1100
San Diego, CA 92101
Attn.: Cynthia Lumely

1

Minutes Entered
07-18-07
County Clerk

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES**<br>COURTHOUSE ADDRESS:<br>Clara Shortridge Foltz Criminal Justice Center<br>210 West Temple Street<br>Los Angeles, CA 90012<br>PLAINTIFF/PETITIONER:<br><br>STEPHEN LIEBB | Reserved for Clerk's File Stamp<br><br>CONFORMED COPY<br><br>JUL 2 0 2007<br><br>LOS ANGELES<br>SUPERIOR COURT<br><br>Joseph M. Pulido |
| **CLERK'S CERTIFICATE OF MAILING**<br>CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | CASE NUMBER:<br><br>BH004542 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

☐ Order Extending Time            ☑ Order re: Writ of Habeas Corpus
☐ Order to Show Cause             ☐ Order
☐ Order for Informal Response     ☑ Order re:
☐ Order for Supplemental Pleading ☑ Copy of Petition for Writ of Habeas Corpus for the
                                       Attorney General

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to the cause.  I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

July 20, 2007
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _Joseph M. Pulido_Clerk
        Joseph M. Pulido

Stephen Liebb
C-60825
San Quentin State Prison
San Quentin, California 94964

Department of Justice
Office of the Attorney General of the State of
California
110 West A Street, Suite 1100
San Diego, California 92101
Attn: Ms. Cynthia Lumely

# B201189

| | | |
|---|---|---|
| Name | STEPHEN LIEBB | MC-275 |
| Address | SAN QUENTIN STATE PRISON 4N69L | |
| | SAN QUENTIN, CA 94974 | |
| | | |
| CDC or ID Number | | |

### STATE OF CALIFORNIA

### COURT OF APPEAL
*(Court)*

| | |
|---|---|
| STEPHEN LIEBB<br>Petitioner<br><br>vs.<br><br>ROBERT L. AYERS, Jr., Warden<br>Respondent | **PETITION FOR WRIT OF HABEAS CORPUS**<br><br>No. _____<br>*(To be supplied by the Clerk of the Court)* |

COURT OF APPEAL - SECOND DIST.

# FILED

AUG 1 3 2007

JOSEPH A. LANE _____ Clerk

F. STAPLETON _____ Deputy Clerk

## INSTRUCTIONS – READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

COURT OF APPEAL - SECOND DIST.

F I L E D

AUG 2 1 2007

JOSEPH A. LANE

J. HATTER

Deputy Clerk

In re STEPHEN LIEBB,                                    B201189

On Habeas Corpus.                              (Super. Ct. No. A083014)

THE COURT:

The court has read and considered the petition for writ of habeas corpus filed
August 13, 2007.  The petition is summarily denied.

DOI TODD, Acting P. J.            ASHMANN-GERST, J.            CHAVEZ, J.

Court of Appeal, Second Appellate District, Div. 2 - No. B201189
S155807

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re STEPHEN LIEBB on Habeas Corpus

The petition for review is denied.

SUPREME COURT
FILED

OCT 2 4 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE
Chief Justice

# ATTACHMENT B

# COPY OF PETITIONS FILED IN STATE COURTS

# INTRODUCTION

This petition addresses violations of state and federal due process rights at petitioner, Stephen Liebb's, subsequent parole hearing held on July 27, 2006 before the California Board of Parole Hearings.

Petitioner was convicted of one count of first degree murder with the use of a knife in Los Angeles County. [Case Number A083014] and sentenced to a term of 25 years to life plus one year. His life term began on February 15, 1983. At his third appearance before the board of Prison Terms on July 17, 2003, petitioner was denied parole for three years based on the commitment offense being carried out "in an especially cruel manner." **[July 17, 2003 Decision attached as Exhibit A]**

The 2003 Board panel also cited other factors for denying parole and made specific recommendations necessary for petitioner to be found suitable for parole. The 2003 panel stated:

1. "The prisoner has programmed in a limited manner while incarcerated. He has failed to upgrade vocationally and he has not sufficiently participated in beneficial self-help and therapy programs.
2. The panel also found "that the prisoner's gains are recent, and he must demonstrate an ability to maintain gains over an extended period of time."
3. The panel asked that "[petitioner] remain disciplinary free and, if available, we need for you to upgrade vocationally and educationally, it has been recommended by prior psychologists and it was recommended by the previous Board. And if available, participate in self-help and cooperate with clinicians in the completion of a clinical evaluation. We're asking for a new psychological evaluation."

1

The 2003 panel denied parole for three years, during which time petitioner completed a Paralegal correspondence course; participated in numerous self-help programs and cooperated in a new psychological evaluation.

Petitioner's crime and programming are summarized in the Life Prisoner Evaluation Report prepared by Correctional Counselor Zanni for the July, 2006 Board Hearing. **[Attached as Exhibit B]**

The Psycho-Social Assessment for the July 2006 Hearing prepared by Contract Psychologist Michel Lynn Inaba, Ph.D **[Attached as Exhibit C]** stated:

"Mr. Liebb's rating on the PCL-R would be level 1 [very low] indicating lack of psychopathy." Dr. Inaba concluded that: "Given his lack of mental disorder, [it] it therefore recommended that case factors other that psychopathology be considered to determine eligibility at this time."

Petitioner appeared before the Board of Parole Hearings on July 27, 2006 for a subsequent parole consideration hearing. Petitioner was again found unsuitable for parole and was denied parole for one year despite having complied with all of the previous panel's recommendations. The panel denied parole based on the commitment offense being "carried out in an especially cold, cruel, callous and calculated manner" and a finding that his gains were recent. **[See transcript of July 27, 2006 hearing attached as Exhibit D]**

2

Petitioner asserts that the panel of July 27, 2006 violated his state and federal due process rights by failing to set his term in accordance with Penal Code Section 3041, et seq.; by engaging in an arbitrary and unconstitutional determination that his crime was particularly egregious; by failing to adduce any evidence that was probative of a finding that he is currently dangerous; by failing to find him suitable for parole in accordance with the Board Regulation set forth in sections 2400-2411 of the California Code of Regulations; and by violating the due process required by applicable case law. Petitioner also maintains that there was **no evidence** underlying the "reasons" the Board articulated for finding him unsuitable for parole.

Petitioner contends that the Board's conclusion that he is unsuitable for parole and its failure to set a term despite his accomplishments while incarcerated and despite having served over twenty-five years (not including good time credits) on a sentence of twenty-six years to life, is clearly erroneous.

## PETITIONER'S CONTENTIONS

1. The Board failed to apply the statutory requirements of PC §3041.
2. Petitioner's due process rights were violated by the Board's failure to find him suitable for parole.
3. The Board improperly and arbitrarily characterized petitioner's crime as being exceptionally egregious.
4. There was no reliable evidence before the Board that petitioner was currently dangerous.
5. There was no evidence with any indicia of reliability underlying the reasons the Board gave for finding petitioner unsuitable for parole.

3

6. The panel's decision was arbitrary and capricious and ignored or minimized petitioner's rehabilitative efforts and gains. The panel's recommendations regarding necessary programming lack any basis in the record for their purported "need."

7. The panel's weighty and unreasonable reliance on unalterable factors including the crime itself violate his due process rights. The Board has in effect resentenced petitioner from a term of twenty-five years to life, to life without the possibility of parole.

# MEMORANDUM OF POINTS AND AUTHORITIES
## ARGUMENT

## PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN PAROLE AND A RIGHT TO A PAROLE HEARING THAT COMPLIED WITH DUE PROCESS

### A. CALIFORNIA'S STATUTORY SCHEME CREATES A PRESUMPTIVE LIBERTY INTEREST IN PAROLE

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause, and then show that the procedures that led to the deprivation were constitutionally insufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-460 (1989); McQuillion v. Duncan, 306 F. 3d 895, 900 (9th Cir. 2002).

In the parole context, a prisoner alleging a due process claim must demonstrate the existence of a protected liberty interest in parole, and the denial of one or more of the procedural protections that must be afforded when a prisoner has a liberty interest in parole. The Supreme Court held in 1979, and reiterated in 1987, that "a state's statutory scheme if it uses mandatory language, creates a presumption that parole release will be granted when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion, 306 F. 3d at 901 (citing Greenholtz v. Inmates of Nebraska Penal, 443 U.S. 1, 7 (1979) and Board of Pardons v. Allen, 482 U.S. 369, 373 (1987)).

5

The Ninth Circuit has held that California's parole scheme creates a cognizable liberty interest in parole because Penal Code Section 3041 uses mandatory language and is similar to the Nebraska and Montana statutes addressed in Greenholtz and Allen respectively. McQuillion 306 F. 3d at 901-903. As the Ninth Circuit has explained, "Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process Clause," and that interest arises "upon the incarceration of the inmate." Biggs v. Terhune, 334 F. 3d 910, 914-915 (9th Cir. 2003). See Sass v. California Board of Prison Terms (9th Cir. 2006) No. 05-16455.

The statutory presumption of parole suitability is set forth in Penal Code Section 3041 (a) which states:

"A year before an inmate's minimum eligible release date, the Board shall again meet with the inmate and shall normally set a parole release date. The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information rlevant to the seting of parole release dates..."

The determinations that must be met to overcome the presumption that parole release will be granted are set forth in Penal Code Section 3041 (b) which states:

"The panel or board **shall** set a release date unless it determines that the gravity of the current convicted offense or offenses, is such that a consideration of the public safety requires a more lengthy period of incarceration for this individual and that a parole date, therefore, cannot be fixed at this meeting." [Emphasis added]

The language in Penal Code Section 3041 (a) providing that the Board "shall normally" set a parole release date creates a presumption affecting the burden of proof, since the statute is in furtherance of an expressly stated public policy to ensure uniformity in sentencing.

California Evidence Code Section 604 provides as follows:

"A presumption affecting the burden of proof is a presumption established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied..."

The Board fails to conduct hearings with the presumption that a parole date will be set, absent a finding, which must be supported by reliable evidence and a statement of reasons (see Penal Code Section 3041.5 (b)(2), that the circumstances of the crime preclude an ability to set a date at that time.

## B. THE CALIFORNIA PAROLE SCHEME REQUIRES THAT PAROLE SHALL NORMALLY BE GRANTED

All violent crime demonstrates the perpetrator's potential for posing a grave risk to public safety, yet parole is mandatory for violent felons serving determinate sentences. (Pen. Cod Section 3000, subs. (b)(1).)

The legislature has clearly expressed its intent that when murderers-who are the great majority of inmates serving indeterminate sentences-approach their minimum eligible parole date, the Boards "shall normally set a parole release date." (Pen. Code Section 3041, subd. (a).) The Board's authority to make an exception based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is "normally" to be granted.

The Board denies due process and fails to act impartially by denying parole to approximately ninety-five percent of the inmates it reviews for parole suitability.

7

Petitioner contends that as a matter of law and logic, a parole granting rate of five percent by the Board fails to comply with the mandate of Penal Code Section 3041 (1) which requires that parole is normally to be granted. Petitioner maintains that applying the exception of Section 3041 (b) to well over ninety percent of the applicants considered by the Board violates due process.

It is unreasonable to conclude, as the Board does, that over ninety percent of the murders it considers are "particularly" egregious or cruel.

## C. THE MATRIX IS DESIGNED TO QUANTIFY THE FACTORS PRESENT IN MURDERS CONSIDERED BY THE BOARD AND THE BOARD VIOLATES DUE PROCESS IN DENYING PAROLE BASED ON A CRIME BEING "EXCEPTIONAL" WHEN THE MATRIX ALREADY TAKES THOSE FACTORS INTO ACCOUNT

The Board ignores the existence and purpose of the matrix when considering whether a crime is "especially, heinous, atrocious or cruel." Such a position is untenable. "It is a well-established rule of statutory construction that when a word or phrase has been given a particular scope or meaning in one part o portion of a law it should be given the same scope and meaning in other parts or portions of the law." People v. DeGuzman (2003) 113 Ca App 4th 538, 547-548, citing People v. McKay (2002) 27 Ca. 4th 601, 621.)

Since it is clear within one part of the statutory scheme governing parole that there is a mandatory framework for quantifying the severity of any given instance of murder, it seems equally clear that the Board is precluded from adopting contrary standards for similar and related parts of the same scheme.

8

It is contrary to both common sense and the legislative intent for the Board to examine a crime that falls within the parameters of the matrix and characterize it as being so exceptionally egregious as to invoke the exception to the provisions of the law that the Board "shall normally" set a parole date.

The Uniform Determinate Sentencing Act of 1987 (S.B. 42) was designed to end indeterminate sentencing in California. The legislature's chief concern was with the disparity in sentences for like offenses. It also amended language to Penal Code Section 3041 to reflect the legislature's intent to compel the newly established Community Release Board to "normally set a parole release date" one year prior to an inmate's minimum release date.

Prior to the enactment of S.B. 42 nothing in the language of Penal Code Section 3041 suggested a legislative intent that required the parole authority at the time, the Adult Authority to "normally set a parole release date."

The matrix was established to provide uniform terms and quantify the factors commonly present in murders. Crimes whose circumstances can be quantified within the parameters of the matrix are inherently not particularly cruel and egregious as the Board routinely claims.

The Board's decision to deny parole in this case based on a finding that the crime was exceptional masks an underlying decision that the crime is "more serious than the 'ordinary' [murder] contemplated by the published guidelines. There is no basis in law for such a distinction. The guidelines clearly indicate the class of offense severity into which this case falls, based on the act committed..."

9

"...It is unreasonable and impermissible for the [Board] to base a decision to continue beyond the guidelines on the same factors that went into formulating the guidelines in the first place. No one disputes that this was a serious crime, but the factors of seriousness indicated by this record are included in the guideline themselves. Thus, something more must be stated. The [Board], however, has failed to state any other basis that is supported by any evidence." Little v. Haden, 504 F. Supp. 538, 564 (1980)

## D. THE "SOME EVIDENCE" STANDARD REQUIRES THAT THERE BE SOME EVIDENCE THAT IS PROBATIVE OF PRESENT DANGEROUSNESS

Plaintiff's Due Process rights are also violated by the improper application of the "some evidence" standard as being sufficient to support a finding of parole unsuitability. Due process requires that "some evidence" support the parole board's determination and that the evidence relied upon must possess "some indicia of reliability." Biggs, 334 F. 3d at 915; see McQuillion , 306 F. 3d at 904; Jancesk, 833 F. 3d at 1390 (adopting the "some evidence" standard set forth by the Supreme Court in Superintendent v. Hill, 472 U.S. 445, 457 (1985)); See also Caswell v. Calderon, 363 F. 3d 832, 839 (9th Cir. 2004). the "some evidence" standard is satisfied if there is reliable evidence in the record that could support the conclusion reached. Powell v. Gomez, 33 F. 3d 40 (9th Cir. 1987)); See Cass v. Woodford, 2006 WL 1304953 at *9 (S.D. Cal. 2006) (explaining that "denial of parole must be based on 1) some evidence that 2) bears some indicia of reliability.")

"As discussed, "[i]n the parole context, the requirements of due process are met if some evidence supports the decision." Biggs, 334, F. 3d at 915. "Some evidence," however does, not mean literally "any" evidence. If it did, the protection afforded by due process would be meaningless. See Gerald L. Neuman, The Constitutional Requirement of "some Evidence", 25 San Diego L. Rev. 631, 663-664 (1988) (noting that "[e]vidence that the respondent was alive at the time in question is usually relevant to any charge against her. The [due process] protection of the 'some evidence' requirement demands more than that-less than legal 'sufficiency' of evidence, but more than a trivial charade.") In addition, the evidence underlying the decision must possess some indicia of reliability." Biggs, 334 F. 3d at 914; Caswell, 363 F. 3d at 839; see Hill, 472 U.S. at 455-456. Evidence that lacks any real probative value cannot constitute "some evidene." See Cato, 924 F. 2d at 705 (holding that a hearsay statement attributed to an inmate whose polygraph examination yielded inconclusive results was "not enough evidence" to meet the Hill standard." Otherwise the requirement of "some evidence" could be satisfied by baseless speculation, superstition, or stereotyping. That, too, wold reduce the requirement of "some evidene" to a sham or a mockery." Rosenkrantz v. Marshall, Case Number CV 05-3836-GAF(AJW) (2006)

## E. THE "SOME EVIDENCE" STANDARD IS NOT APPROPRIATE AT THE FACT FINDING LEVEL BUT ONLY SUITABLE FOR USE BY AN APPELLATE COURT IN THE CONTEXT OF REVIEWING LOWER COURT DECISIONS

11

"Though the Eighth Circuit and some other courts have concluded that the "some evidence" standard is appropriate at the fact-finding level, the prevailing view is that the standard is only suitable for use by an appellate court in the context of reviewing lower court decisions. Courts espousing this view interpret Hill as addressing the "some evidence" standard solely in the context of judicial review of prison administrative decisions. See Brown v. Fauver, 819 F. 2d 395, 399, n.4 (3rd Cir. 1987); Kadama v. Johnson, 786 P. 2d 417, 420 (Colo. 1990) Harper v. State, 397 N. W. 2d 740, 743 (Iowa 1987). The Vermont Supreme Court carefully analyzed Hill, and concluded that Hill addressed the appropriate standard for judicial review of actions of prison authorities rather than the proof necessary for a fact finder to conclude that an inmate violate a disciplinary rule. LaFaso v. Patrissi, 161 Vt. 46, 633 A. 2d 695, 697-98 (Vt. 1993). [**29]...Indeed, citing Hill, the Supreme Court recently explained in a plurality opinion that it has utilized the "some evidence" standard not as a standard of proof, but rather as a standard of review when examining an administrative record developed in an adversarial proceeding. Hamdi v. Rumsfeld, 542 U.S. 507, 124 S. Ct. 2633, 2651, 159 L. Ed. 2d 578 (2004), n.8

n8 The Supreme Court used the following language in explaining the "some evidence" holding of Hill:

Because we conclude that due process demands some system for a citizen to refute his classification, the proposed "some evidence" standard is inadequate. Any process in which the Executive's factual assertions go wholly unchallenged or are simply presumed correct without any opportunity for the alleged combatant to demonstrate otherwise falls constitutionally short. As the Government itself has recognized, we have utilized the "some evidence" standard in the past as a standard of review, not as a standard of proof***That is, it primarily has been employed by the courts in examining an administrative record developed after an adversarial proceeding-one with process at least of the sort that we today hold is constitutionally mandated in the citizen enemy-combatant setting. See [hill]. This standard therefore is ill suited to the situation in which a habeas petitioner has received no prior proceedings before any tribunal and had no opportunity to rebut the Executive's factual assertions before a neutral decisionmaker. Hamdi, 124 St. at 2651.

The presumption of suitability for parole found in the language of Penal Code Section 3041 presupposes that there will be some evidence of unsuitability in each case examined by the Board. The plain language of Penal Code Section 3041 and the legislative intent was that notwithstanding the presence of some evidence to support a finding of unsuitability for parole, parole would normally be granted unless there was evidence that the applicant for parole was currently dangerous.

The Board regulations outlining <u>Factors Tending to Show Unsuitability</u> (CCR Section 2402) should not be used to deny parole suitability where they contradict the plain language and legislative intent of Penal Code Section 3041.

The mandate of Penal Code Section 3041 that the Board normally find applicants suitable for parole unless they present a current risk to public safety may not be thwarted by the Board's regulations. The use of Board Regulations relating to unsuitability for parole that have no probative value relating to current dangerousness violate petitioner's due process rights and results in an arbitrary determination of unsuitability for parole in violation of the plain language and legislative intent of Penal Code Section 3041.

13

The Ninth Circuit Court of Appeal in McQuillion adopted the California Court of Appeal holding in In re Caswell, Cal. App. 4th 1017, 1029 where the Court in considering a rescission panel's authority held that where there "had been 'some evidence' before the granting panel that reasonably justified a finding of unsuitability, a subsequent panel would [not] have carte blanche to rescind the parole decision decades later, for no reason other than its conclusory disagreement with the granting panel's ultimate decision, or mere political aversion to the concept of parole in general.

Notwithstanding the nearly absolute discretion of the Board, we find this interpretation of the standard untenable, and not in line with what our Supreme Court had in mind when it decided [In re Powell, 45 Cal. 3d 894 (1988)].

Indeed 'some evidence' of unsuitability would exist in virtually every parole hearing exposing every grant of parole to a Board's subsequent change of heart or political whim."

The Court of Appeal recognizes that there is always 'some evidence' of unsuitability for parole in every case considered by the Board. Yet parole grants are made in a scant few cases. Petitioner's Due Process and Equal Protection Rights are violated by the Board's failure to grant him parole despite the presence of 'some evidence' of unsuitability. Petitioner maintains that the proper application of the 'some evidence' standard requires that there be some reliable evidence of probative value relating to present dangerousness or post-conviction evidence that the release of an inmate is against the interest of public safety.

## F. THE BOARD'S RELIANCE ON THE COMMITMENT OFFENSE AND IMMUTABLE PRE-CONVICTION FACTORS TO DENY PAROLE VIOLATES PETITIONER'S DUE PROCESS RIGHTS

14

In Biggs, the Ninth Circuit stated that although reliance on the nature of a prisoner's offense may satisfy the 'some evidence' requirement, continued reliance on an unchanging factor such as the circumstances of the offense could result in a due process violation if the prisoner continually demonstrates exemplary behavior and evidence of rehabilitation. Biggs, 334 F. 3d at 916. The Board's decision to deny petitioner parole relied on the commitment offense and his conduct prior to the commitment offense. The Ninth Circuit cautioned the Board about continued reliance on such immutable factors.

"As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." Biggs, 334 F. 3d at 916 The Ninth Circuit added that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative foals espoused by the prison system and could result in a due process violation. Biggs, 334 F. 3d at 917.

The Board's characterization of petitioner's crime as exceptional was arbitrary since the Board routinely and invariably characterizes all firstand second degree murders as exceptional. Petitioner attaches over 200 declarations from inmates serving terms for either first or second degree murder attesting to the fact that they were denied parole because of their crime being particularly cruel, callous or egregious. [Declarations included as Attachment A]

15

Petitioner also asks this Court to take judicial notice of the results of discovery ordered in a petition for writ of habeas corpus filed in the Superior Court of Santa Clara [In Re Viet Mike Ngo on Habeas Corpus, Case No. 127611]. Mr. Ngo's counsel, Jacob Burland, filed a declaration with the court affirming that a total of 547 hearings for inmates serving life terms were held in July, August, September and October 2003. The Board provided transcripts to Mr. Burland for those hearings. Mr. Burland stated that of the 547 inmates who were reviewed for suitability, 500 were denied and 42 were granted parole. One case was remanded en banc; two were continued; and in two cases there was no decision. In all of the denials the commitment offense was used as the primary reason for a parole date being denied. [See Declaration of Jacob Burland attached as Exhibit E]

Based on the arbitrary characterization of every murder as being exceptional, the Board's decision denying parole for petitioner is per se invalid  because he was denied his constitutional right to be heard by an impartial decision-maker. See Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) ("Not only is a biased decision maker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness.") The Ninth Circuit has held that a California inmate is "entitled to have his release date considered by a Board that [is] free from bias or prejudice." O'Bremski v. Mass 915 F. 2d 418, 422 (9th Cir. 1981)

16

"A parole Board's exclusive reliance on the severity of the offense to deny parole not only contravenes the discretionary scheme mandated by statute, but also effectively constitutes an unauthorized resentencing of the defendant. [cites omitted] [to deny parole based exclusively on the severity of offense there must be some significant aggravating or egregious circumstances surrounding the commission of the crime]" Wallman v. Travis  794 N.Y.S. 2d 381, 18 .D. 304, 794 N.Y.S. 2d 381, 2005

One district court has explained the rationale underlying the Ninth Circuit's pronouncement in Biggs that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation" Biggs. 334 F. 3d at 917) as follows:

"Whether the facts of the crime of conviction, or other unchanged criteria, affect the parole eligibility decision can only be predicated on the "predictive value" of the unchanged circumstances. Otherwise, if the unchanged circumstance per se can be used to deny parole eligibility, sentencing is taken out of the hands of the judge and totally reposited in the hands of the BPT. That is, parole eligibility could be indefinitely and forever delayed based on the nature of the crime even though the sentence given set forth the possibility of parole-a sentence given with the facts of the crime fresh in the mind of the judge. While it would not be a constitutional violation to forego parole altogether for certain crimes, what the state cannot constitutionally do is have a sham system where the judge promises the possibility of parole, but because of the nature of the crime, The BPT effectively deletes such from the system. Not can a parole system, where parole is mandated to be determined on someone's future potential to harm the community, constitutionally exist where despite 20 or more years of prison life which indicates the absence of danger to the community in the future, the BPT commissioners revulsion towards the crime itself, or some other unchanged circumstance, constitutes the alpha and omega of the decision. Nobody elected the BPT commissioners as sentencing judges.

17

Rather, in some realistic way, the facts of the unchanged circumstance must indicate a present danger to the community if released, and this can only be assessed not in a vacuum, after four or five eligibility hearings, but counterpoised against the backdrop of prison events. Bair v. Folsom State Prison, 2005 WL 2219220, *12 n.3 (E.D. Cal. 2005), report and recommendation adopted by, 2005 WL 3081634 (E.D. Cal. 2005).

A parole decision supported by some evidence may nonetheless abrogate due process if it did not consider and weight all favorable evidence In re Capistran (2003) 107 Cal. App. 4th 1299, 1306 See also In re, Robert Rosenkrantz on Habeas Corpus, Superior Court for the County of Los Angeles, Case No. BH003529.

Petitioner was denied parole based mainly on the gravity of the commitment offense, the circumstances of which can never change. Therefore, the Board's continued sole reliance on the commitment offense will essentially convert petitioner's sentence of life with the possibility of parole into a sentence of life without the possibility of parole. Petitioner has no chance of obtaining parole unless the Board holds that his crime was not serious enough to warrant a denial of parole. Irons v. Warden (E.D. Cal. 2005) 358 F. Supp. 2d 936, 947.)

The California Court of Appeal in In re Jeffrey David Elkins on Habeas Corpus, Case No. A11925 (2006) discussed the use of the gravity of the commitment offense to support a denial of parole:

"Scott II summarizes the law in this situation. 'The Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense 'alone' is correct [citation], but the proposition must be properly understood. The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being his 'Previous Record of Violence').

18

Reliance on such an immutable factor 'without regard or consideration of subsequent circumstances' may be unfair [citation], and runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." [Citation.] The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. Thus, denial of release based solely on the basis of the gravity of the commitment offense warrants especially close scrutiny." (Scott II, supra, 133 Cal. App. 4th at pp. 594-595, fns. omitted.)"

The Court of Appeal stated that "it violates due process to deny parole "'where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense'" (Scott II, supra, 133 Cal. App. 4th at p. 598)..."

The Court of Appeal also observed: "We also take into account that whatever facts make a given offense aggravated or mitigated, compared to the hypothetical average are not overlooked or disregarded when the Board sets a release date...A release date is set by a calculation under matrixes (Section 2403, subds. (b)-(f) that require the Board to weight myriad facts of the offense that might be deemed aggravating (Section 2404) or mitigating (Section 2405), including any factors that would have been considered by a judge in choosing a determinate sentence...Thus, [the Board]...must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating that release currently poses "an unreasonable risk of danger to society" (Section 2402, subd. (a); accord, Pen. Code, Section 3041, subd. (b))."

## G. THE BOARD'S DETERMINATION THAT A CRIME IS PARTICULARLY CRUEL AND EGREGIOUS IS ARBITARY AND UNCONSTITUTIONAL

The Board's determination that a murder is especially cruel or egregious is unconstitutionally vague and standardless. See United States v. Doremus, 888 F. 2d 630, 634 (9th Cir. 1989); Schwartzmiller v. Gardner, 752 F. 2d 1341, 1346 (9th Cir. 1984)

In In re Dannenberg, 34 Cal. 4th 1061, 23 Cal. Rptr. 3d 417 (2005), the California Supreme Court held that the Board could find a prisoner unsuitable for parole based on the circumstances of the crime so long as the violence or viciousness of the inmate's crime "was more than minimally necessary to convict him of the offense for which he is confined." As the dissent in Dannenberg pointed out, this standard is completely unreviewable. 34 Cal. 4th at 1101, 23 Ca. Rptr. 3d at 446. The minimal elements of the crime are simply that a person dies at the hands of another with the perpetrator exhibiting the requisite intent. **Any** fact in addition to this could be one viewed as "more than minimally necessary to convict." For example, one Board panel may believe that use of a knife per se causes undue suffering; another may believe use of any weapon where death is not instantaneous, probably the vast majority of murders, exhibits callousness. A conclusion can easily be reached by those who want to claim that the facts of any murder are such that they prove more than those facts minimally necessary for a conviction.

20

The "gravity" regulations, including Section 2492 (c) (1) (D) (offense carried out in a manner showing exceptionally callous disregard for human suffering), have become indecipherable interms of their appliatio-they can mean anything to anybody. This is unconstitutional vagueness. The Board must necessarily determine which facts constitute a particularly egregious murder and rely on findings not determined to be true by a judge or jury. A murder defendant in California does not present a defense to mitigate against a finding that his or her murder is less egregious. The Board utilizes a concept which is not part of the burden of proof during any murder trial or part of the terms of a plea bargain agreement in California.

When an inmate is found suitable for parole, the Board does not deem the crime as particularly egregious. However, the governor when reviewing the Board's determination may disagree and consider the crime as particularly egregious and deny parole. At a subsequent hearing, the Board may again classify the crime as particularly egregious. The change in the classification of the very same crime from being non-exceptional to particularly egregious demonstrates the arbitrariness of the classification process itself.

Furthermore, the Board panel's use of uncharged unproven elements of his crime to continue denying parole violates peitioner's constitutional right to a jury trial under the sixth amendment of the United States Constitution. See Aprendi v. New Jersey, 530 U.S. 466, 490:

  "[O]ther than the facts of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." [Blakely v. Washington, 2004 DJDAR 7581]

21

The California Supreme Court held that a statute authorizing the death penalty or life imprisonment without the possibility of parole if a jury finds as special circumstances that a murder was "especially heinous, atrocious, or cruel, manifesting exceptional depravity" was unconstitutionally vague and violative of fundamental due process. People v. Superior Court of Santa Clara County (Engert) (1982) Sup., 183 Cal. Rptr. 800, 802-803

## H.  THE BOARD'S FINIDNG THAT  PETITIONER'S GAINS WERE RECENT LACK EVIDENTIARY SUPPORT AND ARE NOT EVIDENCE OF UNSUITABILITY

The Board found that petitioner's gains were recent. this conclusion is refuted by over a two decades of positive program within prison as is documented in the Board Report. Compliance with the Board's recommendations is a factor to be considered in favor of suitability and release "[no] matter how longstanding or recent it is." In re Lee (Oct. 17, 2006, B18831____Cal.App.4th____,____[06 C.D.O.S. 9728, 9731. See also In re Elkins (October 31, 2006, A11925)

Petitioner complied with all of the Board's recommendations after being given a three year denial of parole in 2003. The multi-year denial was based on the Board finding that it was not reasonable that petitioner could make himself suitable prior to three years. After diligently completing every Board requirement, a finding by the Board that petitioner is still unsuitable because his "gains are recent" is arbitrary.

22

# CONCLUSION

Petitioner asks that this Court issue an order to show cause; hold an evidentiary hearing; declare the rights of the parties; and make whatever other rulings are necessary in the interest of justice.


Respectfully submitted:              DATED:_____


_____
Stephen Liebb
Petitioner

ARGUMENT TO CALIFORNIA COURT OF APPEAL

Stephen Liebb (Petitioner) asserts that the decision of July 20, 2007 by the Los Angeles County Superior Court upholding the Board's finding of parole unsuitability violated his State and Federal Due Process Rights.

The Superior Court decision found "that there is some evidence to support the board's finding that "the motive for the crime is inexplicable or very trivial in relation to the offense (Cal. Code Regs., tit 15 Section 2402, subd. (c)(1)(E).

The Superior Court's decision misapplied California law as interpreted by the Supreme Court and California Court of Appeal and was not supported by some evidence.

The Board's reliance on a crime that took place in 1981 to find him unsuitable for parolee violates petitioner's Due Process rights.

The California Court of Appeal in *In re Sandra Davis Lawrence on Habeas Corpus 2007 Cal. App. LEXIS 803 (Cal. Ct. App. 2007)* stated: "[T]he Governor's reversal of [the Board's] recommendation must be upheld if there is 'some evidence' to support his contrary conclusion that parole should be denied. But as explained earlier in discussing the standard of review, it is not just 'some evidence' to support the Governor's findings, but 'some evidence' sufficient to satisfy the statute's ultimate test, that is. 'some evidence' the release of [petitioner] would subject society to an 'unreasonable risk' of danger to public safety." Lawrence at p. 35.

The Lawrence Court explained that over time the crime no longer amounts to 'some evidence' supporting a denial of parole. The Court discussed the Court of Appeal decision in *In re Elkins (2006) 144 Cal. App. 4th 475*. "The Elkins court then addressed the single factor militating against parole the Governor found sufficient to reverse the Board's recommendation-the 'heinous, atrocious or cruel' nature of the murder. Despite the violence of the act-striking the victim multiple times with a baseball bat-even coupled with the robbery motive for the crime, dumping the body down a steep embankment deep in the wilderness, and then fleeing the state to escape responsibility, the court found this commitment crime failed to supply 'some evidence' Elkin's release posed "'an unreasonable risk of danger to society." It then concluded, "Given the lapse of 26 years and the exemplary

1

rehabilitative gains made by Elkins over that time, continued reliance on these aggravating facts of the crime no longer amounted to 'some evidence' supporting denial of parole." **Lawrence at p. 44**.

The Lawrence Court also clarified that the 'some evidence' test applied in Elkins and other decisions by California Courts of Appeal requires "that the commitment offense must supply 'some evidence' supporting a finding the prisoner's release at the present time would represent an 'unreasonable risk' of danger to public safety. The Court rejected an interpretation of the 'some evidence' standard that would allow 'some evidence' of one of the factors listed in the regulations as militating against release as being sufficient to justify the Governor's reversal of a recommended release on parole. **Lawrence at p. 45.**

Whatever predictive value the commitment offense and petitioner's juvenile record may have had has dissipated given Petitioner's rehabilitation over the ensuing years. **See In re Tripp, 150 Cal. App. 4th 306, 320 (Cal. Ct. App. 2007)**

The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being his "previous Record of Violence"). Reliance on such an immutable factor "without regard to or consideration of subsequent circumstances may be unfair (In re Smith (2003) 114 Cal App. 4th 343, 373, and "runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." (Biggs v. Terhune, (9th Cir. 2003) 334 F. 3d 910, 917) The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate the offender will present an unreasonable public safety risk if released from prison. Yet the predictive value of the commitment offense may be very questionable after a long period of time (Irons v. Warden of California State Prison-Solano (E.D. Cal. 2005) 358 F. Supp. 2d 936, 947, fn 2). Thus, denial of release solely on the basis of the commitment offense warrants especially close scrutiny.

2

The Board and the Superior Court failed to consider that the "motivation" for the crime was NOT a dispute over rent money, but that was one incident in a series of escalating disputes between the petitioner and the victim and the victim's brother and friends. Testimony at the Board hearing indicated that Petitioner, then age 25 was under significant stress due to his brother suffering from cancer. He had recently graduated UCLA School of Law and begun working for a law firm in Century City. The stress over beginning a new career and possible disbarment was also a factor. Trial testimony indicated that shortly before the murder, Petitioner had overdosed on sleeping pill and was treated at Cedar Sinai Medical Center. Thus, attributing the commitment offense to a dispute over rent money is a gross distortion of the record.

The Court of Appeal in **In re David Barker on Habeas Corpus** (First Appellate District, A114686, 5/24/07) commented on the Board's statement that "the motive for the crime was inexplicable or very trivial" stating:

The Board did not indicate whether if found [Barker's] motive 'inexplicable' or 'very trivial in relationship to the offense,' as it could not be both." (Scott I, supra, 119 Cal. App. 4th at p. 892). "An 'inexplicable' motive, as we understand it, is one that is unexplained or unintelligible, as where the commitment offense does not appear to be related to the conduct of the victim{s{ and has no other discernible purpose. A person whose motive for a criminal act cannot be explained or is unintelligible is therefore unusually unpredictable and dangerous." (Id. at p. 893)

The Court, in Barker then discussed a Board finding that Barker's motive was "very trivial in relationship to [his] offense." "The offense committed by most prisoners serving life terms is, of course, murder. Given the high value our society places upon life, there is no motive for unlawfully taking the life of another human being that could not reasonably be deemed 'trivial.' The Legislature has foreclosed that approach, however, by declaring that murders with life sentences must "normally" be given release dated when they approach their minimum eligible parole dates…The reference in Board regulations to motives that are 'very trivial in relationship to the offense' therefore requires comparisons; to fit the regulatory description, the motive must be materially less significant (or more 'trivial') than those which conventionally drive people to commit the offense in question and therefore more indicative of a risk of danger to society if the prisoner is released than is ordinarily presented. (Scott I, supra, 119, Cal. App 4th at p. 893)

3

The California Court of Appeal **in In re Sandra Davis Lawrence on Habeas Corpus 2007 Cal. App. LEXIS (Cal. Ct. App. 2007)** noted at page 52:

"And in the experience of this Division in regularly reviewing parole board and gubernatorial denials of parole to murderers over the past few years, it is seldom either a board or governor classifies a murder, first or second degree, as less than "atrocious, heinous, or callous" or the equivalent. Indeed they usually add a qualifier such as "extremely" or "vicious" to the description.

The California Supreme Court has clarified California's "some evidence" test in this respect however. To be used as the primary basis of a denial of parole, a commitment offense must involve more than the minimum elements of the crime." Nor every first degree murder can be found to be "atrocious, heinous, or callous" or the equivalent without doing violence to the Supreme Court's articulation of the "some evidence" test.

"The floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal.'" Bracey v. Gramely (1977) 520 U.S. 899, 904-905, quoting Withrow v. Larkin (1975) 421 U.S. 35, 46

The Board's arbitrary exercise of its authority violates the essence of due process. See Accardi v. O'Shaughnessy, 347 U.S. 260, 267-268 (1984). The requirement of an impartial decision-maker transcends concerns for diminishing the likelihood of error. As the Supreme Court clearly held in Edwards v. Balisok, 520 U.S. 641, 648 (1977) a decision made by a fact-finder who has predetermined the outcome is per se invalid-even where there is ample evidence to support it.

Petitioner includes as **Attachment 1** Factual findings in In re Donnell E. Jameison on Habeas Corpus (Santa Clara County Superior Court No. 71194, January 2007) which lends support to his claim of arbitrariness by the Board in characterizing virtually every commitment offense as exceptional. Petitioner notes that the Superior Court considered a statistically significant sample in making its findings.

There was no evidence to support the Board's finding that Petitioner was unsuitable for parole and the decision was contrary to California law and Federal Due Process guarantees.

4

Petitioner is entitled to Federal protection of his due process rights under Irons v. Carey (9th Cir. 2007) 479 F. 3d 658 which expressly embraced the rationale in Biggs v. Terhune (9th Cir. 2003) 334 F. 3d 910 that "*A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could* result in a due process violation." Biggs v. Terhune at 916-17

The crime lacks any predictive value of current dangerousness after 26 years and therefore provides no evidence in support of unsuitability for parole. Petitioner's State and Federal Due Process rights have been violated by the Board's sole reliance on his commitment offense to deny parole.

Petitioner includes as **Attachment 2** a letter dated May 29, 2007 from the prosecutor in his case, confirming that he was offered a plea to murder in the second degree. Petitioner's case is not particularly egregious, otherwise no plea to murder in the second degree would have been offered.


CONCLUSION


Petitioner asks for an evidentiary hearing so that he may substantiate his claim that the Board routinely and arbitrarily characterize virtually all murders as exceptional so as to deny parole; he asks that the court grant his petitioner and order his immediate release.


DATED:_____          Respectfully submitted:



                                Stephen Liebb

5

STEPHEN LIEBB
C-60825
SAN QUENTIN STATE PRISON
SAN QUENTIN, CALIFORNIA 94974

### IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In re                                          NO:_____

Stephen Liebb                       Ct. of Appeal No. B201189

On Habeas Corpus
_____/

### PETITION FOR REVIEW

TO: The Honorable Ronald M. George, chief Justice, and to the Honorable
Associate Justices of the Supreme Court of California:

Petitioner Stephen Liebb respectfully petitions this Court for review of the
unpublished decision of the Court of Appeal, First Appellate District
summarily denying Liebb's petition for writ of habeas corpus. A copy of the
decision is attached to this petition. Liebb does not petition for rehearing in
the Court of Appeal because the summary denial was final upon filing. (CA.
Rules of Ct., Rule 24)

### ISSUES PRESENTED FOR REVIEW

1. Whether the Board failed to apply the statutory requirements of Penal
   Code Section 3041.
2. Whether Petitioner's due process rights were violated by the Board's
   failure to find him suitable for parole.
3. .Whether the Board improperly and arbitrarily characterized
   petitioner's crime as being exceptionally egregious.
4. Whether there was any reliable evidence before the Board that
   petitioner was currently dangerous.
5. Whether there was any evidence with any indicia of reliablity
   underlying the reasons the Board gave finding petitioner unsuitable
   for parole.

1

6. Whether the Panel's decision was arbitrary and capricious and ignored or minimized petitioner's rehabilitative gains. Whether the panel's recommendations regarding necessary programming lack any basis in the record for their purported "need."

7. Whether the panel's weighty and unreasonable reliance on unalterable factors including the crime itself violate petitioner's due process rights.

8. .Whether the Court of Appeal failed to apply the recent holdings in In re Gray (2007) 151 Cal. App. 4th 379; In re Elkins (2006) 144 Cal. App. 4th 477; and In re Lawrence (2007) 150 Cal. App. 4th 1511 in making its decision.

## STATEMENT OF THE CASE AND FACTS

Petitioner was convicted of one count of first degree murder with the use of a knife in Los Angeles County (Case Number A083014) and sentenced to a term of 25 years to life plus one year. His life term began on February 15, 1983. At his third appearance before the Board of Prison terms on July 17, 2003, petitioner was denied parole for three years based on a finding that the commitment offense was carried out "in an especially cruel manner." (July 17, 2003 Decision attached as Exhibit A to original petition.)

The 2003 Board panel also cited other factors for denying parole and made specific recommendations for petitioner to be found suitable for parole. the 2003 panel stated:

1. "The prisoner has programmed in a limited manner while incarcerated. He has failed to upgrade vocationally and he has not sufficiently participated in beneficial self-help therapy programs."
2. The panel also found "that the prisoner's gains are recent, and he must demonstrate an ability to maintain gains over an extended period of time."

2

3. The panel asked that "(petitioner) remain disciplinary free and, if available, we need for you to upgrade vocationally and educationally, it has been recommended by prior psychologists and it was recommended by the previous Board. And if available, participate in self-help and cooperate with clinicians in the completion of a clinical evaluation. We're asking for a new psychological evaluation."

The 2003 panel denied parole for three years, during which time petitioner completed a Paralegal correspondence course; participated in numerous self-help programs and cooperated in a new psychological evaluation.

Petitioner's crime and programming are summarized in the life Prisoner Evaluation Report prepared by Correctional Counselor Zanni for the July, 2006 Board hearing (Attached as Exhibit B to the original petition.)

The Psycho-Social Assessment for the July 2006 Hearing prepared by Contract Psychologist Michel Lynn Inaba, Ph.D (Attached as Exhibit C) stated:

"Mr. Liebb's rating on the PCL-R would be level 1 (very low) indicating lack of psychopathy." Dr. Inaba concluded that: "Given his lack of mental disorder, (it) is therefore recommended that cases factors other than psychopathology be considered to determine eligibility at this time."

Petitioner appeared before the Board of Parole Hearings on July 27, 2006 for a subsequent parole consideration hearing. Petitioner was again found unsuitable for parole and was denied parole for one year despite having complied with all of the previous panel's recommendations.

The panel denied parole based on the commitment offense being carried out in an especially cold, cruel, callous and calculated manner" and finding that his gains were recent. (See transcript of July 27, 2006 hearing as Exhibit D.)

Petitioner asserts that the panel of July 27, 2006 violated his state and federal due process rights by failing to set his term in accordance with Penal Code Section 3041, et seq.; by engaging in an arbitrary and unconstitutional determination that his crime was particularly egregious; by failing to adduce any evidence that was probative of a finding that he is currently dangerous; by failing to find him suitable for parole in accordance with the Board regulations set forth in Sections 2400-2411 of the California Code of regulations; and by violating the due process required by applicable case law. Petitioner also maintains that there was evidence underlying the "reasons" the Board articulated for finding him unsuitable for parole.

4

## MEMORANDUM OF POINTS AND AUTHORITIES
## ARGUMENT

PETITIONER HAS A FEDERALLY PROTECTED LIBERITY
INTEREST IN PAROLE AND A RIGHT TO A PAROLE HEARING
THAT COMPLIED WITH DUE PROCESS

### A. CALIFORNIA'S STATUTORY SCHEME CREATES A PRESUMPTIVE LIBERTY INTEREST IN PAROLE

The Due Process Clause of the Fourteenth Amendment prohibits
state action that deprives a person of life, liberty, or property without
due process of law. A person alleging a due process violation must
first demonstrate that he or she was deprived of a liberty or property
interest protected by the Due Process Clause, and then show that
the procedures that led to the deprivation were constitutionally
insufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S.
454, 459-460 (1989); McQuillion v. Duncan, 306 F. 3d 895, 900 (9th
Cir. 2002).

In the parole context, a prisoner alleging a due process claim must
demonstrate the existence of a protected liberty interest in parole,
and the denial of one or more of the procedural protections that must
be afforded when a prisoner has a liberty interest in parole. The
Supreme Court held in 1979, and reiterated in 1987, that "a state's
statutory scheme if it uses mandatory language, creates a
presumption that parole release will be granted when or unless
certain designated findings are made, and thereby gives rise to a
constitutional liberty interest." McQuillion, 306 F. 3d at 901 (citing
Greenholtz v. Inmates of Nebraska Penal, 443 U.S. 1, 7 (1979) and
Board of Pardons v. Allen, 482 U.S. 369, 373 (1987)).

5

The Ninth Circuit has held that California's parole scheme creates a cognizable liberty interest in parole because Penal Code Section 3041 uses mandatory language and is similar to the Nebraska and Montana statutes addressed in Greenholtz and Allen respectively. McQuillion 306 F. 3d at 901-903. As the Ninth Circuit has explained, "Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process Clause," and that interest arises "upon the incarceration of the inmate." Biggs v. Terhune, 334 F. 3d 910, 914-915 (9th Cir. 2003). See Sass v. California Board of Prison Terms (9th Cir. 2006) No. 05-16455.

The statutory presumption of parole suitability is set forth in Penal Code Section 3041 (a) which states:

"A year before an inmate's minimum eligible release date, the Board shall again meet with the inmate and shall normally set a parole release date. The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information rlevant to the seting of parole release dates..."

The determinations that must be met to overcome the presumption that parole release will be granted are set forth in Penal Code Section 3041 (b) which states:

"The panel or board **shall** set a release date unless it determines that the gravity of the current convicted offense or offenses, is such that a consideration of the public safety requires a more lengthy period of incarceration for this individual and that a parole date, therefore, cannot be fixed at this meeting." [Emphasis added]

The language in Penal Code Section 3041 (a) providing that the Board "shall normally" set a parole release date creates a presumption affecting the burden of proof, since the statute is in furtherance of an expressly stated public policy to ensure uniformity in sentencing.

6

California Evidence Code Section 604 provides as follows:

"A presumption affecting the burden of proof is a presumption established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied..."

The Board fails to conduct hearings with the presumption that a parole date will be set, absent a finding, which must be supported by reliable evidence and a statement of reasons (see Penal Code Section 3041.5 (b)(2), that the circumstances of the crime preclude an ability to set a date at that time.

## B. THE CALIFORNIA PAROLE SCHEME REQUIRES THAT PAROLE SHALL NORMALLY BE GRANTED

All violent crime demonstrates the perpetrator's potential for posing a grave risk to public safety, yet parole is mandatory for violent felons serving determinate sentences. (Pen. Cod Section 3000, subs. (b)(1).)

The legislature has clearly expressed its intent that when murderers-who are the great majority of inmates serving indeterminate sentences-approach their minimum eligible parole date, the Boards "shall normally set a parole release date." (Pen. Code Section 3041, subd. (a).) The Board's authority to make an exception based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is "normally" to be granted.

The Board denies due process and fails to act impartially by denying parole to approximately ninety-five percent of the inmates it reviews for parole suitability.

7

Petitioner contends that as a matter of law and logic, a parole granting rate of five percent by the Board fails to comply with the mandate of Penal Code Section 3041 (1) which requires that parole is normally to be granted. Petitioner maintains that applying the exception of Section 3041 (b) to well over ninety percent of the applicants considered by the Board violates due process.

It is unreasonable to conclude, as the Board does, that over ninety percent of the murders it considers are "particularly" egregious or cruel.

## C. THE MATRIX IS DESIGNED TO QUANTIFY THE FACTORS PRESENT IN MURDERS CONSIDERED BY THE BOARD AND THE BOARD VIOLATES DUE PROCESS IN DENYING PAROLE BASED ON A CRIME BEING "EXCEPTIONAL" WHEN THE MATRIX ALREADY TAKES THOSE FACTORS INTO ACCOUNT

The Board ignores the existence and purpose of the matrix when considering whether a crime is "especially, heinous, atrocious or cruel." Such a position is untenable. "It is a well-established rule of statutory construction that when a word or phrase has been given a particular scope or meaning in one part o portion of a law it should be given the same scope and meaning in other parts or portions of the law." People v. DeGuzman (2003) 113 Ca App 4th 538, 547-548, citing People v. McKay (2002) 27 Ca. 4th 601, 621.)

Since it is clear within one part of the statutory scheme governing parole that there is a mandatory framework for quantifying the severity of any given instance of murder, it seems equally clear that the Board is precluded from adopting contrary standards for similar and related parts of the same scheme.

8

It is contrary to both common sense and the legislative intent for the Board to examine a crime that falls within the parameters of the matrix and characterize it as being so exceptionally egregious as to invoke the exception to the provisions of the law that the Board "shall normally" set a parole date.

The Uniform Determinate Sentencing Act of 1987 (S.B. 42) was designed to end indeterminate sentencing in California. The legislature's chief concern was with the disparity in sentences for like offenses. It also amended language to Penal Code Section 3041 to reflect the legislature's intent to compel the newly established Community Release Board to "normally set a parole release date" one year prior to an inmate's minimum release date.

Prior to the enactment of S.B. 42 nothing in the language of Penal Code Section 3041 suggested a legislative intent that required the parole authority at the time, the Adult Authority to "normally set a parole release date."

The matrix was established to provide uniform terms and quantify the factors commonly present in murders. Crimes whose circumstances can be quantified within the parameters of the matrix are inherently not particularly cruel and egregious as the Board routinely claims.

The Board's decision to deny parole in this case based on a finding that the crime was exceptional masks an underlying decision that the crime is "more serious than the 'ordinary' [murder] contemplated by the published guidelines. There is no basis in law for such a distinction. The guidelines clearly indicate the class of offense severity into which this case falls, based on the act committed..."

9

"...It is unreasonable and impermissible for the [Board] to base a decision to continue beyond the guidelines on the same factors that went into formulating the guidelines in the first place. No one disputes that this was a serious crime, but the factors of seriousness indicated by this record are included in the guideline themselves. Thus, something more must be stated. The [Board], however, has failed to state any other basis that is supported by any evidence." Little v. Haden, 504 F. Supp. 538, 564 (1980)

## D. THE "SOME EVIDENCE" STANDARD REQUIRES THAT THERE BE SOME EVIDENCE THAT IS PROBATIVE OF PRESENT DANGEROUSNESS

Plaintiff's Due Process rights are also violated by the improper application of the "some evidence" standard as being sufficient to support a finding of parole unsuitability. Due process requires that "some evidence" support the parole board's determination and that the evidence relied upon must possess "some indicia of reliability." Biggs, 334 F. 3d at 915; see McQuillion , 306 F. 3d at 904; Jancesk, 833 F. 3d at 1390 (adopting the "some evidence" standard set forth by the Supreme Court in Superintendent v. Hill, 472 U.S. 445, 457 (1985)); See also Caswell v. Calderon, 363 F. 3d 832, 839 (9th Cir. 2004). the "some evidence" standard is satisfied if there is reliable evidence in the record that could support the conclusion reached. Powell v. Gomez, 33 F. 3d. 40 (9th Cir. 1987)); See Cass v. Woodford, 2006 WL 1304953 at *9 (S.D. Cal. 2006) (explaining that "denial of parole must be based on 1) some evidence that 2) bears some indicia of reliability.")

"As discussed, "[i]n the parole context, the requirements of due process are met if some evidence supports the decision." Biggs, 334, F. 3d at 915. "Some evidence," however does, not mean literally "any" evidence. If it did, the protection afforded by due process would be meaningless. See Gerald L. Neuman, The Constitutional Requirement of "some Evidence", 25 San Diego L. Rev. 631, 663-664 (1988) (noting that "[e]vidence that the respondent was alive at the time in question is usually relevant to any charge against her. The [due process] protection of the 'some evidence' requirement demands more than that-less than legal 'sufficiency' of evidence, but more than a trivial charade.") In addition, the evidence underlying the decision must possess some indicia of reliability." Biggs, 334 F. 3d at 914; Caswell, 363 F. 3d at 839; see Hill, 472 U.S. at 455-456. Evidence that lacks any real probative value cannot constitute "some evidene." See Cato, 924 F. 2d at 705 (holding that a hearsay statement attributed to an inmate whose polygraph examination yielded inconclusive results was "not enough evidence" to meet the Hill standard." Otherwise the requirement of "some evidence" could be satisfied by baseless speculation, superstition, or stereotyping. That, too, wold reduce the requirement of "some evidene" to a sham or a mockery." Rosenkrantz v. Marshall, Case Number CV 05-3836-GAF(AJW) (2006)

## E. THE "SOME EVIDENCE" STANDARD IS NOT APPROPRIATE AT THE FACT FINDING LEVEL BUT ONLY SUITABLE FOR USE BY AN APPELLATE COURT IN THE CONTEXT OF REVIEWING LOWER COURT DECISIONS

"Though the Eighth Circuit and some other courts have concluded that the "some evidence" standard is appropriate at the fact-finding level, the prevailing view is that the standard is only suitable for use by an appellate court in the context of reviewing lower court decisions. Courts espousing this view interpret Hill as addressing the "some evidence" standard solely in the context of judicial review of prison administrative decisions. See Brown v. Fauver, 819 F. 2d 395, 399, n.4 (3rd Cir. 1987); Kadama v. Johnson, 786 P. 2d 417, 420 (Colo. 1990) Harper v. State, 397 N. W. 2d 740, 743 (Iowa 1987). The Vermont Supreme Court carefully analyzed Hill, and concluded that Hill addressed the appropriate standard for judicial review of actions of prison authorities rather than the proof necessary for a fact finder to conclude that an inmate violate a disciplinary rule. LaFaso v. Patrissi, 161 Vt. 46, 633 A. 2d 695, 697-98 (Vt. 1993). [**29]...Indeed, citing Hill, the Supreme Court recently explained in a plurality opinion that it has utilized the "some evidence" standard not as a standard of proof, but rather as a standard of review when examining an administrative record developed in an adversarial proceeding. Hamdi v. Rumsfield, 542 U.S. 507, 124 S. Ct. 2633, 2651, 159 L. Ed. 2d 578 (2004), n.8

n8 The Supreme Court used the following language in explaining the "some evidence" holding of Hill:

Because we conclude that due process demands some system for a citizen to refute his classification, the proposed "some evidence" standard is inadequate. Any process in which the Executive's factual assertions go wholly unchallenged or are simply presumed correct without any opportunity for the alleged combatant to demonstrate otherwise falls constitutionally short. As the Government itself has recognized, we have utilized the "some evidence" standard in the past as a standard of review, not as a standard of proof***That is, it primarily has been employed by the courts in examining an administrative record developed after an adversarial proceeding-one with process at least of the sort that we today hold is constitutionally mandated in the citizen enemy-combatant setting. See [hill]. This standard therefore is ill suited to the situation in which a habeas petitioner has received no prior proceedings before any tribunal and had no opportunity to rebut the Executive's factual assertions before a neutral decisionmaker. Hamdi, 124 St. at 2651.

12

The presumption of suitability for parole found in the language of Penal Code Section 3041 presupposes that there will be some evidence of unsuitability in each case examined by the Board. The plain language of Penal Code Section 3041 and the legislative intent was that notwithstanding the presence of some evidence to support a finding of unsuitability for parole, parole would normally be granted unless there was evidence that the applicant for parole was currently dangerous.

The Board regulations outlining <u>Factors Tending to Show Unsuitability</u> (CCR Section 2402) should not be used to deny parole suitability where they contradict the plain language and legislative intent of Penal Code Section 3041.

The mandate of Penal Code Section 3041 that the Board normally find applicants suitable for parole unless they present a current risk to public safety may not be thwarted by the Board's regulations. The use of Board Regulations relating to unsuitability for parole that have no probative value relating to current dangerousness violate petitioner's due process rights and results in an arbitrary determination of unsuitability for parole in violation of the plain language and legislative intent of Penal Code Section 3041.

The Ninth Circuit Court of Appeal in McQuillion adopted the California Court of Appeal holding in In re Caswell, Cal. App. 4th 1017, 1029 where the Court in considering a rescission panel's authority held that where there "had been 'some evidence' before the granting panel that reasonably justified a finding of unsuitability, a subsequent panel would [not] have carte blanche to rescind the parole decision decades later, for no reason other than its conclusory disagreement with the granting panel's ultimate decision, or mere political aversion to the concept of parole in general.

Notwithstanding the nearly absolute discretion of the Board, we find this interpretation of the standard untenable, and not in line with what our Supreme Court had in mind when it decided [In re Powell, 45 Cal. 3d 894 (1988)].

Indeed 'some evidence' of unsuitability would exist in virtually every parole hearing exposing every grant of parole to a Board's subsequent change of heart or political whim."

The Court of Appeal recognizes that there is always 'some evidence' of unsuitability for parole in every case considered by the Board. Yet parole grants are made in a scant few cases. Petitioner's Due Process and Equal Protection Rights are violated by the Board's failure to grant him parole despite the presence of 'some evidence' of unsuitability. Petitioner maintains that the proper application of the 'some evidence' standard requires that there be some reliable evidence of probative value relating to present dangerousness or post-conviction evidence that the release of an inmate is against the interest of public safety.

## F. THE BOARD'S RELIANCE ON THE COMMITMENT OFFENSE AND IMMUTABLE PRE-CONVICTION FACTORS TO DENY PAROLE VIOLATES PETITIONER'S DUE PROCESS RIGHTS

14

In Biggs, the Ninth Circuit stated that although reliance on the nature of a prisoner's offense may satisfy the 'some evidence' requirement, continued reliance on an unchanging factor such as the circumstances of the offense could result in a due process violation if the prisoner continually demonstrates exemplary behavior and evidence of rehabilitation. Biggs, 334 F. 3d at 916. The Board's decision to deny petitioner parole relied on the commitment offense and his conduct prior to the commitment offense. The Ninth Circuit cautioned the Board about continued reliance on such immutable factors.

"As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." Biggs, 334 F. 3d at 916 The Ninth Circuit added that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative foals espoused by the prison system and could result in a due process violation. Biggs, 334 F. 3d at 917.

The Board's characterization of petitioner's crime as exceptional was arbitrary since the Board routinely and invariably characterizes all firstand second degree murders as exceptional. Petitioner attaches over 200 declarations from inmates serving terms for either first or second degree murder attesting to the fact that they were denied parole because of their crime being particularly cruel, callous or egregious. [Declarations included as Attachment A]

15

Petitioner also asks this Court to take judicial notice of the results of discovery ordered in a petition for writ of habeas corpus filed in the Superior Court of Santa Clara [In Re Viet Mike Ngo on Habeas Corpus, Case No. 127611]. Mr. Ngo's counsel, Jacob Burland, filed a declaration with the court affirming that a total of 547 hearings for inmates serving life terms were held in July, August, September and October 2003. The Board provided transcripts to Mr. Burland for those hearings. Mr. Burland stated that of the 547 inmates who were reviewed for suitability, 500 were denied and 42 were granted parole. One case was remanded en banc; two were continued; and in two cases there was no decision. In all of the denials the commitment offense was used as the primary reason for a parole date being denied. **[See Declaration of Jacob Burland attached as Exhibit E]**

Based on the arbitrary characterization of every murder as being exceptional, the Board's decision denying parole for petitioner is per se invalid because he was denied his constitutional right to be heard by an impartial decision-maker. See Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) ("Not only is a biased decision maker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness.") The Ninth Circuit has held that a California inmate is "entitled to have his release date considered by a Board that [is] free from bias or prejudice." O'Bremski v. Mass 915 F. 2d 418, 422 (9th Cir. 1981)

16

"A parole Board's exclusive reliance on the severity of the offense to deny parole not only contravenes the discretionary scheme mandated by statute, but also effectively constitutes an unauthorized resentencing of the defendant. [cites omitted] [to deny parole based exclusively on the severity of offense there must be some significant aggravating or egregious circumstances surrounding the commission of the crime]" Wallman v. Travis  794 N.Y.S. 2d 381, 18 .D. 304, 794 N.Y.S. 2d 381, 2005

One district court has explained the rationale underlying the Ninth Circuit's pronouncement in Biggs that "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation" Biggs. 334 F. 3d at 917) as follows:

"Whether the facts of the crime of conviction, or other unchanged criteria, affect the parole eligibility decision can only be predicated on the "predictive value" of the unchanged circumstances. Otherwise, if the unchanged circumstance per se can be used to deny parole eligibility, sentencing is taken out of the hands of the judge and totally reposited in the hands of the BPT. That is, parole eligibility could be indefinitely and forever delayed based on the nature of the crime even though the sentence given set forth the possibility of parole-a sentence given with the facts of the crime fresh in the mind of the judge. While it would not be a constitutional violation to forego parole altogether for certain crimes, what the state cannot constitutionally do is have a sham system where the judge promises the possibility of parole, but because of the nature of the crime, The BPT effectively deletes such from the system. Not can a parole system, where parole is mandated to be determined on someone's future potential to harm the community, constitutionally exist where despite 20 or more years of prison life which indicates the absence of danger to the community in the future, the BPT commissioners revulsion towards the crime itself, or some other unchanged circumstance, constitutes the alpha and omega of the decision. Nobody elected the BPT commissioners as sentencing judges.

17

Rather, in some realistic way, the facts of the unchanged circumstance must indicate a present danger to the community if released, and this can only be assessed not in a vacum, after four or five eligibility hearings, but counterpoised against the backdrop of prison events. Bair v. Folsom State Prison, 2005 WL 2219220, *12 n.3 (E.D. Cal. 2005), report and recommendation adopted by, 2005 WL 3081634 (E.D. Cal. 2005).

A parole decision supported by some evidence may nonetheless abrogate due process if it did not consider and weight all favorable evidence In re Capistran (2003) 107 Cal. App. 4th 1299, 1306 See also In re, Robert Rosenkrantz on Habeas Corpus, Superior Court for the County of Los Angeles, Case No. BH003529.

Petitioner was denied parole based mainly on the gravity of the commitment offense, the circumstances of which can never change. Therefore, the Board's continued sole reliance on the commitment offense will essentially convert petitioner's sentence of life with the possibility of parole into a sentence of life without the possibility of parole. Petitioner has no chance of obtaining parole unless the Board holds that his crime was not serious enough to warrant a denial of parole. Irons v. Warden (E.D. Cal. 2005) 358 F. Supp. 2d 936, 947.)

The California Court of Appeal in In re Jeffrey David Elkins on Habeas Corpus, Case No. A11925 (2006) discussed the use of the gravity of the commitment offense to support a denial of parole:

"Scott II summarizes the law in this situation. 'The Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense 'alone' is correct [citation], but the proposition must be properly understood. The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being his 'Previous Record of Violence').

18

Reliance on such an immutable factor 'without regard or consideration of subsequent circumstances' may be unfair [citation], and runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." [Citation.] The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. Thus, denial of release based solely on the basis of the gravity of the commitment offense warrants especially close scrutiny." (Scott II, supra, 133 Cal. App. 4th at pp. 594-595, fns. omitted.)"

The Court of Appeal stated that "it violates due process to deny parole "'where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense'" (Scott II, supra, 133 Cal. App. 4th at p. 598)..."

The Court of Appeal also observed: "We also take into account that whatever facts make a given offense aggravated or mitigated, compared to the hypothetical average are not overlooked or disregarded when the Board sets a release date...A release date is set by a calculation under matrixes (Section 2403, subds. (b)-(f) that require the Board to weight myriad facts of the offense that might be deemed aggravating (Section 2404) or mitigating (Section 2405), including any factors that would have been considered by a judge in choosing a determinate sentence...Thus, [the Board]...must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating that release currently poses "an unreasonable risk of danger to society" (Section 2402, subd. (a); accord, Pen. Code, Section 3041, subd. (b))."

19

## G. THE BOARD'S DETERMINATION THAT A CRIME IS PARTICULARLY CRUEL AND EGREGIOUS IS ARBITARY AND UNCONSTITUTIONAL

The Board's determination that a murder is especially cruel or egregious is unconstitutionally vague and standardless. See United States v. Doremus, 888 F. 2d 630, 634 (9th Cir. 1989); Schwartzmiller v. Gardner, 752 F. 2d 1341, 1346 (9th Cir. 1984)

In In re Dannenberg, 34 Cal. 4th 1061, 23 Cal. Rptr. 3d 417 (2005), the California Supreme Court held that the Board could find a prisoner unsuitable for parole based on the circumstances of the crime so long as the violence or viciousness of the inmate's crime "was more than minimally necessary to convict him of the offense for which he is confined." As the dissent in Dannenberg pointed out, this standard is completely unreviewable. 34 Cal. 4th at 1101, 23 Ca. Rptr. 3d at 446. The minimal elements of the crime are simply that a person dies at the hands of another with the perpetrator exhibiting the requisite intent. **Any** fact in addition to this could be one viewed as "more than minimally necessary to convict." For example, one Board panel may believe that use of a knife per se causes undue suffering; another may believe use of any weapon where death is not instantaneous,  probably the vast majority of murders, exhibits callousness. A conclusion can easily be reached by those who want to claim that the facts of any murder are such that they prove more than those facts minimally necessary for a conviction.

The "gravity" regulations, including Section 2492 (c) (1) (D) (offense carried out in a manner showing exceptionally callous disregard for human suffering), have become indecipherable interms of their appliatio-they can mean anything to anybody. This is unconstitutional vagueness. The Board must necessarily determine which facts constitute a particularly egregious murder and rely on findings not determined to be true by a judge or jury. A murder defendant in California does not present a defense to mitigate against a finding that his or her murder is less egregious. The Board utilizes a concept which is not part of the burden of proof during any murder trial or part of the terms of a plea bargain agreement in California.

When an inmate is found suitable for parole, the Board does not deem the crime as particularly egregious. However, the governor when reviewing the Board's determination may disagree and consider the crime as particularly egregious and deny parole. At a subsequent hearing, the Board may again classify the crime as particularly egregious. The change in the classification of the very same crime from being non-exceptional to particularly egregious demonstrates the arbitrariness of the classification process itself.

Furthermore, the Board panel's use of uncharged unproven elements of his crime to continue denying parole violates peitioner's constitutional right to a jury trial under the sixth amendment of the United States Constitution. See Aprendi v. New Jersey, 530 U.S. 466, 490:

   "[O]ther than the facts of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." [Blakely v. Washington, 2004 DJDAR 7581]

21

The California Supreme Court held that a statute authorizing the death penalty or life imprisonment without the possibility of parole if a jury finds as special circumstances that a murder was "especially heinous, atrocious, or cruel, manifesting exceptional depravity" was unconstitutionally vague and violative of fundamental due process. People v. Superior Court of Santa Clara County (Engert) (1982) Sup., 183 Cal. Rptr. 800, 802-803

## H.  THE BOARD'S FINIDNG THAT  PETITIONER'S GAINS WERE RECENT LACK EVIDENTIARY SUPPORT AND ARE NOT EVIDENCE OF UNSUITABILITY

The Board found that petitioner's gains were recent. this conclusion is refuted by over a two decades of positive program within prison as  is documented in the Board Report. Compliance with the Board's recommendations is a factor to be considered in favor of suitability and release "[no] matter how longstanding or recent it is." In re Lee (Oct. 17, 2006, B18831____Cal.App.4th____,____[06 C.D.O.S. 9728, 9731. See also In re Elkins (October 31, 2006, A11925)

Petitioner complied with all of the Board's recommendations after being given a three year denial of parole in 2003. The multi-year denial was based on the Board finding that it was not reasonable that petitioner could make himself suitable prior to three years. After diligently completing every Board requirement, a finding by the Board that petitioner is still unsuitable because his "gains are recent" is arbitrary.

## CONCLUSION

Petitioner asks that this Court issue an order to show cause; hold an evidentiary hearing; declare the rights of the parties;  and make whatever other rulings are necessary in the interest of justice.


Respectfully submitted:                    DATED: _8·24.07_


_Stephen Liebb_ (signature)

Stephen Liebb
Petitioner


23

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

COURT OF APPEAL - SECOND DIST.

F I L E D

AUG 21 2007

JOSEPH A. LANE          Clerk

J. HATTER

Deputy Clerk

In re STEPHEN LIEBB,

On Habeas Corpus.

B201189

(Super. Ct. No. A083014)

THE COURT:

The court has read and considered the petition for writ of habeas corpus filed August 13, 2007.  The petition is summarily denied.

_____          _____          _____
DOI TODD, Acting P. J.          ASHMANN-GERST, J.          CHAVEZ, J.

DECLARATION OF SERVICE BY U.S. MAIL

CASE NAME: In re Stephen Liebb (C-60825)
         Supreme Court of California NO.
         Court of Appeal No. B201188

I, _Hector Oropeza_ declare:

I am 18 years of age and older and not a party to this matter.

On _August 26, 2007_ I served the attached

                    Petitioner for Review

in said cause, placing, or causing to be placed, a true copy
thereof, enclosed in a sealed envelope with postage thereon
fully prepaid, in the internal mail collection system at San
Quentin State Prison, San Quentin, California, 94974, addressed
as follows:

    CALIFORNIA COURT OF APPEAL
    300 SPRING STREET, FLOOR 2
    LOS ANGELES, CA 90013-1213

Office of the Attorney General
455 Golden Gate Ave.
San Francisco, CA 94102

I declare under penalty of perjury under the laws of the State
of California that the foregoing is true and correct; and that
this declaration was executed on _8/26/2007_ in San Quentin.
California.

\#-24646, 4N-924P

_Hector Oropeza_
Declarant                              Signature